The appeal of PECO Energy, docketed to No. 2146 C.D.1995, is dismissed.

**PECO ENERGY COMPANY, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent (19 Cases).**

Commonwealth Court of Pennsylvania.

Argued June 11, 1996.

Decided Aug. 16, 1996.

Roslyn G. Pollack, for Petitioner.

Maribeth Wilt–Seibert, for Respondent.

Before COLINS, President Judge, LEADBETTER, J., and LORD, Senior Judge.

COLINS, President Judge.

The matter before the Court questions whether unemployment compensation bene-

---

fits are reduced by the amount of pension monies paid by an employer to an employee who elected to retire under an enhanced retirement program. We hold that unemployment compensation benefits are subject to offset in such situations. Accordingly, we reverse the Board's finding that employees herein are exempt from the offset provisions of the Unemployment Compensation Law.[1]

Before the Court are nineteen (19) appeals from orders of the Unemployment Compensation Board of Review (Board) granting full benefits without reduction to employees who elected to accept an enhanced early retirement package. Because the appeals have commonality in facts, issue, and employer, they have been consolidated for review, and henceforth will be collectively referred to as PECO Pension Case I. The facts common to all are set forth below.[2]

In 1994 PECO Energy Company (PECO) offered all its employees an enhanced early retirement package titled Voluntary Retirement Incentive Plan (hereinafter "VRIP"). VRIP amended PECO's regular retirement plan. Under PECO's regular plan any employee 60 years of age or older was eligible to retire with full pension benefits; employees between the ages of 55 and 60 were eligible to retire with early retirement pension discounts of 4 percent per year. VRIP lowered the eligible retirement age to 50, provided an additional three years of service credit, and eliminated all early retirement reductions for purposes of computing pension amounts. VRIP offered to all employees with five years of service and who were 50 years of age as of December 31, 1995, the opportunity to retire from PECO with 100 percent of their pension[3] and full lifetime medical benefits paid by PECO. The plan continued to provide for PECO's 100% funding of the pension without employee contributions.

VRIP was announced to all employees on April 14, 1994. Employees were required to fill out election forms and choose one of three mutually exclusive options: (1) to remain employed with PECO, or (2) to accept VRIP, or (3) to accept a different voluntary separation plan. All of the claimants involved herein were 50 years of age or older and elected to accept VRIP.[4] Claimants then applied for unemployment benefits. In all nineteen cases, the referee found claimants were eligible for benefits pursuant to Section 402(b) of the Law.[5] In so finding, the referee determined that each claimant voluntarily quit employment with cause of a necessitous and compelling nature.[6] Since claimants had retired and were receiving pension benefits, the referee was required to determine

---

1. Unemployment Compensation Law (hereinafter "Law"), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751–914.

2. There are facts of record that distinguish each case. However, before this Court for determination is a question of law and not a question of fact. Therefore, only those facts relevant to the issue presented are outlined in this opinion.

3. The actual value of the pension is based upon services performed for a base year and chargeable employer.

4. At the time of acceptance of VRIP, claimants' pensions were as follows:

| | |
|---|---|
| Claimant Prusinski | $1,598.00 |
| Claimant Henasey | $1,796.63 |
| Claimant Dawson | $1,990.41 |
| Claimant Diederich | $3,164.03 |
| Claimant Sims | $ 878.81 |
| Claimant Sardou | $ 859.26 |
| Claimant Shultice | $3,526.75 |
| Claimant Shanley | $1,601.00 |
| Claimant Todak | $1,679.53 |
| Claimant Shoemaker | $2,752.47 |
| Claimant Gaddy | $2,473.46 |
| Claimant Mazzacano | $2,702.16 |
| Claimant McLaughlin | $1,859.43 |
| Claimant Clelland | $3,836.23 |
| Claimant Ferrell | $2,090.54 |
| Claimant Shott | $ 666.20 |
| Claimant Wright | $1,263.08 |
| Claimant Mayo | $2,178.00 |
| Claimant Reid | $2,720.00 |

5. 43 P.S. § 802(b). This section mandates that an employee who voluntarily quits employment without cause of a necessitous and compelling reason is ineligible to receive unemployment compensation benefits.

6. We note that PECO does not challenge the eligibility determinations entered by the referee and affirmed by the Board. On appeal to this Court, the Board argues that in failing to appeal the eligibility determinations PECO has waived appellate review of the issue. We agree with the Board and note that PECO has not challenged claimants' eligibility for benefits in its brief to this Court.

whether claimants' awards of unemployment compensation benefits were to be offset against claimants' pension benefits, *i.e.*, whether Section 404(d)(2) of the Law[7] was applicable to claimants herein. The referee determined that claimants were exempted from the provisions of Section 404(d)(2) of the Law because claimants were involuntarily and permanently separated from employment prior to their normal retirement age as defined by 34 Pa.Code § 65.103. PECO appealed that determination to the Board.

The Board affirmed, finding that PECO's retirement age was 55 not 50, and that claimants retired prior to claimants' regular retirement age. PECO filed a petition for review in this Court.

█ In considering appeals from the Board, our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed or findings of fact were supported by substantial evidence. *Salerno v. Unemployment Compensation Board of Review*, 674 A.2d 776 (Pa.Cmwlth.1996).

█ PECO's sole issue for review is whether unemployment compensation benefits are reduced by the amount of pension monies paid by an employer to an employee who has elected to retire under an enhanced retirement program. This is a question of law and as such is reviewable by this Court. Resolution of this issue rests in the offset of benefits provision of the Law[8] and the exception thereto as set forth in 34 Pa.Code § 65.103(a).

Section 404(d)(2) of the Law provides:

Notwithstanding any other provisions of this section each eligible employe who is unemployed with respect to any week ... shall be paid ... compensation in an amount equal to his weekly benefit rate less the total of (i) the remuneration, if any, paid or payable to him with respect to each week for services performed which is in excess of his partial benefit credit and (ii) vacation pay, if any, which is in excess of his partial benefit credit, except when

paid to an employe who is permanently or indefinitely separated from his employment.

(2)(i) deductions provided for in clause (1), for any week with respect to which an individual is receiving a pension, including a governmental or other pension, retirement or retired pay, annuity or any other similar periodic payment, under a plan maintained or contributed to by a base period or chargeable employer, the weekly benefit amount payable to such individual for such week shall be reduced, but not below zero, by the prorated weekly amount of the pension as determined under subclause (ii).

(ii) If the pension is entirely contributed by the employer, then 100% of the prorated weekly amount of the pension shall be deducted.

. . . .

(iii) No deduction shall be made under this clause by reason of the receipt of a pension if the services performed by the individual during the base period or remuneration received for such services for such employer did not affect the individual's eligibility for, or increase the amount of, such pension, retirement or retired pay annuity or similar payment.

43 P.S. § 804(d)(2). Thus, under the Law an employee otherwise eligible for unemployment compensation benefits shall have benefits offset when the reason for leaving employment results from the acceptance of a retirement plan. However, consideration must be given to 34 Pa.Code § 65.103(a), the exception to the offset requirement.

Section 65.103. Separation prior to retirement date.

(a) When an employe has accumulated certain moneys, rights or equities under a retirement pension or annuity plan but is permanently and involuntarily separated from his employment prior to retirement date, and payment is made to him from the moneys or in liquidation of his rights or equities, that payment may not constitute

---

7. 43 P.S. § 804(d)(2).

8. Section 404(d)(2) of the Law, 43 P.S. § 804(d)(2).

a retirement pension or annuity within the meaning of section 404(d)(4)(iii) of the law (43 P.S. § 804(d)(4)(iii)) nor may it be considered a deducible wage replacement under any other provision of the law.

(b) Subsection (a) applies whether the payment is made in a lump sum or in installments.

(c) For the purposes of this section, the phrase "prior to retirement date" means prior to the claimant's attainment of the age specified in the retirement plan or program at which the employe may be retired with full or reduced pension rights.

34 Pa.Code § 65.103(a)-(c).

This Court has had several occasions to interpret these statutory provisions and their predecessors. For example, in *Novak v. Unemployment Compensation Board of Review*, 73 Pa.Cmwlth. 148, 457 A.2d 610 (1983), we held that a United States Marine Corps pension was deductible from unemployment compensation. In *Tenaglia v. Unemployment Compensation Board of Review*, 73 Pa.Cmwlth. 453, 458 A.2d 331 (1983), noting the legislative intent to protect against the hazards of indigency and to preserve funds for those in need, and noting also that the 1980 amendment to this statutory provision deleted exclusions for payment under certain federal programs, for federal railroad retirement payments, we held that a service-connected disability pension was offsetable. In *Mahland v. Unemployment Compensation Board of Review*, 83 Pa.Cmwlth. 301, 476 A.2d 1023 (1984), we concluded that a lump sum pension payment, even if immediately "rolled over" to an Individual Retirement Account, must be allocated pro rata and offset against unemployment benefits. Likewise, the offset of social security benefits was upheld against constitutional challenges, *Latella v. Unemployment Compensation Board of Review*, 74 Pa. Cmwlth. 14, 459 A.2d 464 (1983), and such benefits have been offset, *Sanders v. Unemployment Compensation Board of Review*, 86 Pa.Cmwlth. 1, 482 A.2d 1371 (1984). Police pensions to which employee contribu-

tions were statutorily mandated were held to be deductible as well. *Gallo v. Unemployment Compensation Board of Review*, 98 Pa.Cmwlth. 471, 511 A.2d 931 (1986).

The common thread in each of the aforementioned cases is claimant's eligibility for retirement. Collectively, these cases stand for the general principle of law that for a claimant to be exempted from the offset provision of the Law, the claimant must be permanently and involuntarily separated from employment *prior to* claimant's retirement date. *Boyle v. Unemployment Compensation Board of Review*, 130 Pa.Cmwlth. 32, 566 A.2d 1259 (1989). Here, the Board found eligibility to retire with full benefits did not accrue until claimants reached the age of 55. This finding was based on the conclusion that VRIP was just another incentive plan and not an amendment to the retirement plan. However, the record is devoid of evidence in support of this conclusion.

The Board also found that acceptance of VRIP was tantamount to being permanently and involuntarily separated from employment prior to retirement date. Thus, what has caused dissension between the Board and PECO is the Board's position on the meaning of the phrase "involuntarily separated from employment prior to retirement date."

It is the Board's position in these cases,[9] that an individual who accepts a retirement plan in a labor market atmosphere of pending layoffs is involuntarily separated from employment. The Board further opines that if the employee did not truly "intend" to retire at the time, even though the employee was of age to accept the offered retirement plan, the acceptance is occurring prior to retirement date because the enhanced plan does not change the original retirement date. This argument is extraordinarily convoluted and ignores the plain language of the Law and the Board's own regulations.

While it is true that the courts will give great deference to an agency's interpretation

9. We note that the Board's position in matters such as the one before the Court has been incon-
sistent.

of its own regulations,[10] the Court will not abdicate its responsibilities and defer to the Board out of courtesy without consideration given to the Law.

Most recently, in *Salerno*, this Court had occasion to review the meaning of 34 Pa.Code § 103(a) as it applies to Section 404(d)(2) of the Law. In *Salerno* we held that eligibility for retirement benefits is the dispositive issue. Furthermore, in reviewing the case law, it is clear that this Court has consistently applied the principle that once an employee is eligible for retirement, the desire to remain employed does not control on the issue of offset of unemployment compensation benefits. *See Grace v. Unemployment Compensation Board of Review*, 158 Pa. Cmwlth. 183, 631 A.2d 748 (1993) (whether an employee plans to retire at the time of separation is not relevant).

Again, in *Rathvon v. Unemployment Compensation Board of Review*, 663 A.2d 893 (Pa.Cmwlth.1995), we held that whether claimant intended to retire or considered him/herself retired is not at issue. Instead, at issue is whether at time of separation claimant was eligible to retire under employer's plan and was eligible to receive pension money without penalty. Since a claimant's eligibility to retire is determinative, in accord with Section 404(d)(2) of the Law, a claimant's weekly benefit rate reduces the benefit amount from monthly retirement income even though claimant took retirement benefits in lump sum payment.[11] Thus, the linchpin in determining whether unemployment compensation benefits are offset by a claimant's retirement benefits is eligibility, *i.e.*, whether claimant was eligible to retire.

As applied to the case *sub judice*, each claimant was eligible to retire at the age of 50. Claimants were offered one of three options: 1) remain with PECO, 2) accept VRIP, or 3) accept an involuntary separation plan. Each claimant herein was 50 years of age or older, and each elected to quit PECO and accept VRIP. When each of these claimants accepted the plan that permitted retirement at age 50, that age then became the "retirement date" for each claimant. Therefore, each claimant was not separated from employment "prior to [his or her] retirement date," as the regulation requires, in order to be exempt from the pension deduction. Thus, the Board incorrectly applied 34 Pa. Code § 103(a) when it determined that each claimant's weekly benefit rate was not subject to the Section 404(d)(2) offset provisions of the Law.

Accordingly, the orders of the Unemployment Compensation Board of Review are reversed.

### ORDER

AND NOW, this 16th day of August, 1996, the orders of the Unemployment Compensation Board of Review in the above-captioned matters are reversed.

---

**10.** *Boyle v. Unemployment Compensation Board of Review*, 130 Pa.Cmwlth. 32, 566 A.2d 1259 (1989).

**11.** This Court has recognized the offset exemption in cases where retirement benefits were paid to an employee separated from employment due to a plant closing before employee reaches retirement age. *Westinghouse v. Unemployment Compensation Board of Review*, 127 Pa.Cmwlth. 172,

561 A.2d 80 (1989). This position of the Court parallels the purpose of the Law which is to protect workers against the devastating effects of unemployment. *See Westinghouse v. Unemployment Compensation Board of Review*, 549 A.2d 623 (Pa.Cmwlth.1988); *Tenaglia v. Unemployment Compensation Board of Review*, 73 Pa. Cmwlth. 453, 458 A.2d 331 (1983).