**John F. DANNERTH, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 11, 1996.
Decided Aug. 16, 1996.

Catherine R. Barone, for Petitioner.

Maribeth Wilt–Seibert, Assistant Counsel, for Respondent.

Before COLINS, President Judge, LEADBETTER, J., and LORD, Senior Judge.

LORD, Senior Judge.

John F. Dannerth appeals in Unemployment Compensation Board of Review (Board) order reversing a referee's decision and denying unemployment benefits.

This case is one of many before this Court on appeal as a result of Board decisions determining the unemployment compensation eligibility of PECO Energy Company (PECO) employees who accepted early retirement or separation incentives as part of PECO's corporation-wide reorganization. PECO's reorganization and the separation packages it offered to employees are described in *PECO v. Unemployment Compensation Board of Review,* 682 A.2d 36 (Pa. Cmwlth.1996) (*PECO Pension Case I*). Dan-

nerth, last employed as a senior engineering technician by PECO, was employed there twenty-five years.

With regard to Dannerth's separation, the Board found the following relevant facts. Dannerth had fears about his job being eliminated because PECO's different divisions had disagreements over which division was responsible to pay for certain project work Dannerth had recently performed. Those fears were reinforced by the reorganization of the company and Dannerth's inability to get a definitive answer to his questions about how long he was to have his job. (He was told, however, that there was enough work to keep him there). He had received a performance evaluation with a "needs improvement" comment in the area of attendance. He was aware that two "needs improvement" comments could lead to a discharge, although he was rated "exceptional" in 1994. Dannerth accepted the voluntary retirement plan. He was fifty at the time but testified he had no interest in retiring until sixty.

The unemployment compensation referee found that Dannerth had a necessitous and compelling reason to terminate his employment and that, therefore, Dannerth was eligible for compensation under Section 402(b) of the Unemployment Compensation Law (Law)[1]. The referee also concluded that Dannerth's pension monies were not deductible from his weekly benefit rate as provided in Section 402(d)(2) of the Law, 43 P.S. § 802(d)(2). The Board reversed the referee's decision, finding that continuing work was available and that Dannerth did not have a necessitous and compelling cause to quit.

The Board also found that Dannerth's weekly, non-contributory pension exceeded his weekly benefit rate and that it would totally offset benefits.

Dannerth frames the issues he raises on appeal this way. One, whether his acceptance of PECO's voluntary retirement incentive plan prior to his retirement date under the prevailing circumstances constituted necessitous and compelling reason to quit, rendering him eligible for unemployment com-

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(b).

pensation. Two, assuming we determine that Dannerth had a necessitous and compelling reason to quit, whether unemployment compensation should be offset by pension monies he receives.

We address the latter question first and, due to our disposition of it, as explained below, we need not reach the former question even for purposes of argument.

Section 404(d)(2) of the Law provides that:

(i) ... (F)or any week with respect to which an individual is receiving a pension, including a governmental or other pension, retirement or retired pay ... under a plan maintained or contributed to by a base period of chargeable employer, the weekly benefit amount payable to such individual for such week shall be reduced, but not below zero, by the pro-rated weekly amount of the pension as determined under subclause (ii).

(ii) If the pension is entirely contributed to by the employer, then one hundred per centum (100%) of the pro-rated weekly amount of the pension shall be deducted. If the pension is contributed to by the individual, in any amount, then fifty per centum (50%) of the pro-rated weekly amount of the pension shall be deducted ...

43 P.S. § 804(d)(2).

This general rule of offset of pension[2] against the weekly benefits rates has been modified to some extent by a Department of Labor and Industry regulation promulgated at 34 Pa.Code § 65.103:

(a) When an employee has accumulated certain moneys, rights or equities under a retirement pension ... but is permanently and involuntarily separated from his employment prior to retirement date, and payment is made to him from the moneys or in liquidation of his rights or equities, that payment may not constitute a retirement pension ... nor may it be considered a deductible wage replacement ...

.    .    .    .    .

**2.** For an historical discussion of the precedent established by this Court on the question of pen-

(c) For the purpose of this section, the phrase "prior to retirement date" means *prior to the claimant's attainment of the age specified in the retirement plan or program at which the employe may be retired with full or reduced pension rights.* (emphasis added)

We have upheld this regulation against challenges to its validity in *Rathvon v. Unemployment Compensation Board of Review,* 663 A.2d 893 (Pa.Cmwlth.1995), and *Westinghouse Electric Corporation v. Unemployment Compensation Board of Review,* 127 Pa.Cmwlth. 172, 561 A.2d 80 (1989), where we applied it to retirement benefits paid to employees separated due to a plant closing.

Prior to *PECO Pension Case I,* we had recent occasion to interpret the regulation in *Salerno v. Unemployment Compensation Board of Review,* 674 A.2d 776 (Pa.Cmwlth. 1996). There, at 778–779, we said:

Under the exempting regulation, "prior to retirement date" means "prior to the claimant's attainment of the age specified in the retirement plan or program at which the employe may be retired with full or reduced pension rights." 34 Pa.Code 65.103.

.    .    .    .    .

It is evident, then, that ... the crucial fact in this case ... is that [claimant] reached his *actual* retirement date. The age at which he may have intended to retire, the offer of an enhancement plan the enabled his earlier retirement without penalty, his preference for delaying retirement in order to receive a larger pension, as well as other *circumstances pertaining to "normal" retirement age, are not part of the relevant inquiry under the regulation.* We note that the Board itself used the phrase "normal retirement age," but a fair reading of its decision reveals that it nevertheless made the dispositive finding, supported by all of the evidence, that Claimant had reached the age at which he could retire and receive his pension. That fact renders an exemption form pension deductibility inapplicable.

sion offset against employment compensation, see *PECO Pension Case I,* 682 A.2d at 38–39.

Dannerth would have us conclude that his pension is not to be offset because he received it prior to his "normal" retirement date, but the language of section 402(d) and the regulation promulgated thereunder make no mention of a normal retirement date determination. While a finding of when a claimant's normal retirement date might be relevant in other circumstances under which an employee is separated, when, as in this case, the employer makes an offer of full pension rights to employee to retire, and the employee accepts such an offer, a finding of when the "normal retirement date" occurs is not necessary to the application of the statute or regulation.

In other words, to track the language of the regulation, Dannerth was not separated prior to retirement date because he had "attain[ed] the age specified in [PECO's] retirement program," the Voluntary Retirement Incentive Plan it offered all its employees in 1995, that age being fifty years old, "at which [he] may be retired with [in this case] full ... pension rights." When Dannerth *accepted* the plan which permitted his retirement at age fifty, that age then became for him the age of retirement and he was therefore *not* separated from his employment prior to his retirement date. Since Dannerth was not separated from his employment, however voluntarily or involuntarily, "prior to retirement date," the regulatory exception to the rule of pension offset does not apply, and we need neither assume nor decide in this case that Dannerth had a necessitous and compelling cause to quit voluntarily. The plain language of the excepting regulation requires that an employee be separated *prior to* retirement date, and, as we have explained, Dannerth was not so separated. The decision of the Unemployment Compensation Board of Review is affirmed.

### ORDER

AND NOW, this 16th day of August, 1996, the order of the Unemployment Compensation Board of Review at No. B–342081, dated October 18, 1995, is hereby affirmed.