**PECO ENERGY COMPANY, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent (3 Cases).**

Commonwealth Court of Pennsylvania.

Argued June 11, 1996.

Decided Aug. 16, 1996.

Roslyn G. Pollack, for Petitioner.

Maribeth Wilt–Seibert, Assistant Counsel, for Respondent.

Before COLINS, President Judge, LEADBETTER, J., and LORD, Senior Judge.

LEADBETTER, Judge.

PECO Energy Company (PECO) appeals from the Orders of the Unemployment Compensation Board of Review which, in two cases, affirmed referees' decisions granting unemployment benefits to Rosena A. Cody (Cody) and Kathleen Duffy (Duffy), under the Unemployment Compensation Law, Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, at I, § 2, as amended, 43 P.S. § 751/ § 914, and, in a third case, reversed a referee's decision denying benefits to Maureen A. Warming (Warming). These appeals have been consolidated for review.

In 1994, PECO, as a part of a program of reorganization and downsizing, offered to all of its employees, the option of selecting a voluntary separation plan or an enhanced early retirement plan. The voluntary separation plan, which provided enhanced severance benefits, was offered to all employees, while the enhanced early retirement plan was offered to those employees who had at least five (5) years of service with PECO, and who would reach the age of 50 by December 31, 1995. Under the early retirement plan qualified employees were allowed to retire at the age of 50 with full pension benefits and medical benefits paid by the Company.[1] These

---

1. The early retirement plan, in effect, amended PECO's existing pension plan which provided that employees could retire at age 60 with full benefits, or at any time after reaching age 55, with an early retirement discount of 4% per year.

plans were announced by PECO in April 1994, and provided that employees were to make a decision as to whether or not to select one of these plans, or to elect to remain with the Company during the period between July 5, 1994 and September 16, 1994. Upon submitting their election form, employees would have a period of seven (7) days to revoke their decisions, after which PECO would deem their selections to be irrevocable.

As a further part of its program of reorganization and downsizing, PECO also announced, in 1994, that it was eliminating the thirty (30) existing job titles in its Customer Service Department and consolidating them into two (2) newly created job titles of customer consultant and energy technician. Via a memo dated July 5, 1994, employees in the Customer Service Department were informed that they would be required to take an aptitude test in order to qualify for one of the positions as a customer consultant or an energy technician. Employees were given a form, to be completed by July 8, 1994, in which they were to choose to take the test for customer consultant, for energy technician, or for both, or not to take the test. Employees who elected not to take the test would be disqualified from continued employment in the Customer Service Department and would be subject to involuntary layoff unless there were able to find another position with the company. Furthermore, even employees who passed the test were not guaranteed positions in the Customer Service Department, as PECO was planning to reduce the size of the department from approximately 1200 positions to approximately 600 positions.

The claimants at issue in the instant appeals, Cody, Duffy and Warming, were all employees in the Customer Service Department. All three elected to accept the early retirement plan[2] offered by PECO and, pursuant thereto, were all voluntarily separated from employment. Following their separations, Cody, Duffy and Warming applied for and were granted unemployment compensa-

tion benefits. In each case, PECO appealed the award of benefits and following hearings, referees confirmed the award of benefits to claimants Cody and Duffy, but reversed the award of benefits to claimant Warming. From the referees' decisions, appeals were filed in each of the three cases, with the Unemployment Compensation Board of Review ("the Board"). The Board determined that claimants Cody, Duffy, and Warming were all eligible for unemployment compensation benefits. The Board found that each claimant had necessitous and compelling cause to voluntarily quit her employment with PECO, since continuing work would not have been available if she had not accepted the early retirement plan offered by PECO.

In these consolidated appeals, PECO asserts that the Board erred by determining that Cody, Duffy, and Warming were eligible for unemployment benefits because the claimants had not received notification that they were going to be laid off and yet elected to accept a voluntary early retirement plan. Under these circumstances, PECO contends, the Board's finding that there was no continuing work available to the claimants was unsupported by the record. Moreover, PECO's argument continues, the claimants' refusal to take the qualifying test precludes a finding that claimants terminated their employment for cause of a necessitous and compelling nature.

■ The purpose of the Unemployment Compensation Law is to provide "compensation for loss of wages by employees during periods when they become unemployed through no fault of their own." 43 P.S. § 752. Therefore, pursuant to Section 402(b) of the Act, "[a] claimant who becomes unemployed by a voluntary termination of his position bears the burden of proving that the termination was for cause of a necessitous and compelling nature." *Anchor Darling Valve Co. v. Unemployment Compensation Board of Review,* 143 Pa.Cmwlth. 171, 598 A.2d 647, 649 (1991). 43 P.S. § 802(b).

■ At least as to claimants Cody and Duffy, the historical facts are substantially

---

2. The issue of pension offsets addressed by this court in the companion case of *Peco Energy Company v. UCBR,* 682 A.2d 36 (Pa.Cmwlth. 1996), and cases consolidated therewith (*PECO Pension I*) was not raised in any of these cases.

undisputed. The determination whether a voluntary termination was for cause of a necessitous and compelling nature is a legal conclusion subject to our plenary review. *Eby v. Unemployment Compensation Board of Review*, 157 Pa.Cmwlth. 10, 629 A.2d 176, 178 (1993); *Department of the Navy v. Unemployment Compensation Board of Review*, 168 Pa.Cmwlth. 356, 650 A.2d 1138, 1140 (1994).

This court, in recent years, has addressed the issue of whether an employee's voluntary termination of employment through acceptance of an employer's offer of early retirement, in the context of corporate restructuring and downsizing, has risen to the level of necessitous and compelling cause. In deciding these cases, the court has emphasized that "uncertainty and speculation about the future existence of a job does not create necessitous and compelling cause." *Department of the Navy v. Unemployment Compensation Board of Review*, 650 A.2d at 1140. Thus, in *Flannery v. Unemployment Compensation Board of Review*, 125 Pa. Cmwlth. 64, 557 A.2d 52 (1989), the court affirmed the denial of unemployment compensation benefits where the Board found speculative the claimant's assertion that an eventual lay-off was inevitable. Similarly, in *Peoples First National Bank v. Unemployment Compensation Board of Review*, 159 Pa.Cmwlth. 134, 632 A.2d 1014 (1993), the court reversed the Board's decision that the claimant was eligible for benefits. He had been told by his employer that a layoff was possible, but not likely, and the employer had introduced unrefuted evidence that continuing work was available to the claimant. Under these circumstances, the court concluded "that Claimant's speculative belief that he would be terminated if he did not accept Employer's voluntary enhanced early retirement package is not cause of a necessitous and compelling nature." 632 A.2d at 1018. *See also: Staub v. Unemployment Compensation Board of Review*, 673 A.2d 434 (Pa.Cmwlth.1996).

By contrast, in *Eby*, the court reversed the decision of the Board and granted benefits to a claimant who had accepted his employer's offer of an early retirement incentive. The court concluded that the claimant's belief that he would be terminated if he did not accept early retirement was reasonable in light of a letter he received from the employer which stated that he was in a group whose work was being eliminated.[3] Finally, in *Philadelphia Parking Authority v. Unemployment Compensation Board of Review*, 654 A.2d 280, 282 (Pa.Cmwlth.1995), the court affirmed the Board's decision awarding benefits to a claimant who accepted early retirement after the employer ("PPA") stated that it would be making sizable layoffs and had already laid off 115 employees. PPA refused to give any indication which employees would be terminated, although the claimant had been told by PPA's representative that he was on a list of people who could be laid off.

In addition to showing the circumstances created by his employer, a claimant must also demonstrate that his response to those circumstances was reasonable. "In order to sustain that burden, a claimant 'must establish that he acted with ordinary common sense in quitting his job, that he made a reasonable effort to preserve his employment, and that he had no other real choice than to leave his employment.'" *Stroh–Tillman v. Unemployment Compensation Board of Review*, 167 Pa.Cmwlth. 154, 647 A.2d 660, 662 (1994) (quoting *Malloy v. Unemployment Compensation Board of Review*, 105 Pa. Cmwlth. 183, 523 A.2d 834, 836 (1987). Where an employee has failed to take all necessary and reasonable steps to preserve the employment relationship, he or she has failed to meet the burden of demonstrating necessitous and compelling cause. *Westwood v. Unemployment Compensation Board of Review*, 110 Pa.Cmwlth. 645, 532 A.2d 1281, 1282 (1987); *Redevelopment Authority of Dauphin County v. Unemployment Compensation Board of Review*, 45 Pa.Cmwlth. 597, 405 A.2d 1061 (1979). In light of the above

---

3. The employer in *Eby* neither contested the claimant's petition for benefits nor presented any evidence at the referee's hearing.

described legal principles applicable to these consolidated cases, we turn to a separate evaluation of each.

*Claimant Cody*

█ The facts common to all three claimants are recited above. With respect to Ms. Cody, the Board found that, "While the claimant's performance reviews had been proficient, the claimant's number of calls per hour did not meet the employer's standard." When the restructuring plans were announced, Cody refused to take the qualifying test and instead accepted the Voluntary Retirement Income Plan. The Board concluded that "[s]ince continuing work was not available to the claimant, the claimant had cause of a necessitous and compelling nature to voluntarily quit [and, therefore,] [t]he claimant is not disqualified from receiving benefits under the provisions of Section 402(b) of the Pennsylvania Unemployment Compensation Law."

PECO argues that it was claimant Cody's decision not to take the qualifying test which caused continuing work to be unavailable to her. The Board, on the other hand, contends that Cody had good cause not to take the test, since she knew that the number of customer calls which she was able to handle in an hour was not in accordance with PECO's standard. In this regard, Cody testified at the referee's hearing that she decided not to take the test and to accept early retirement because she felt that she would not be able to compete in the reorganized company. She also testified that she would have elected to remain employed with PECO if she felt like her job were "guaranteed."

The fact that a job is not guaranteed, however, does not amount to cause of a necessitous and compelling nature. Claimant Cody was given the opportunity to take a test in order to qualify for continuing employment in the Customer Service Department at PECO. Moreover, Cody could have taken the test and, in the event that she

failed, could then have accepted PECO's offer of the enhanced early retirement plan.[4] She declined to take the test based upon her fears that, even if she had *passed* the test, she would not be offered a position because of her inability to meet certain performance standards. Nevertheless, the evidence is clear that claimant Cody had an overall job performance evaluation of "proficient," and that she had not been told by any representative of PECO that she would be laid off if she passed the test. Under these circumstances, claimant Cody's fear that she would not qualify for a position in the Customer Service Department was entirely speculative in nature. By electing not to take the test, however, Cody precluded any possibility that she could remain employed in the Customer Service Department following its reorganization, and thus failed to take "all reasonable and necessary steps to preserve [her] employment [with PECO]." *Anchor Darling Valve Co.*, 598 A.2d at 649.

We therefore hold that the Board erred in determining that claimant Cody had cause of a necessitous and compelling nature to voluntarily quit her employment with PECO. The Board's grant of benefits will be reversed.

*Claimant Duffy*

█ The circumstances regarding claimant Duffy differ in certain significant respects from those regarding Ms. Cody. Ms. Duffy initially elected not to take the qualifying test. On her next work day, following a long weekend, she asked her department manager for permission to take the test and was told that there would be no problem. Subsequently, Duffy was informed by the Human Resources Department that, because she had already submitted the election form indicating her choice not to take the test, she would not be permitted to change her mind. No evidence has been suggested which would indicate that PECO altered its position in reliance on Duffy's election form over the weekend. Duffy later learned that other employees were permitted to take the test after changing their initial decision not to do so.

4. Review of the record discloses that Claimant Cody elected not to take the test on July 11, 1994, the same day she accepted the early retirement plan. Cody would have had until September 16, 1994 to decide whether or not to accept the early retirement plan. By her own testimony, Cody acknowledged that she could have taken the test and had another two months to evaluate her options. (R. 267a).

Moreover, the test election form gave no indication that an employee's decision would be irrevocable once the form was submitted.[5]

Upon careful consideration, we are satisfied that claimant Duffy did not fail to take reasonable and necessary steps to preserve her employment relationship with PECO. Although initially refusing, she promptly sought permission to take the aptitude test and was refused by PECO. Thereupon, claimant Duffy was aware that she would be relegated to excess status and eventual probable layoff. Thus we agree with the Board's conclusion that Duffy had compelling and necessitous cause to voluntarily terminate her employment with PECO, and affirm the Board's decision granting benefits.

*Claimant Warming*

 Having initially concluded that claimant Warming was eligible for benefits, the Board now urges this court to remand her case for another hearing. Specifically, the Board asserts that no factual findings were made as to whether Warming was given the opportunity to take the qualifying test or whether she actually took the test.

Our review of the record discloses that at the hearing, claimant Warming did not testify whether or not she had taken the test and the witness for PECO testified that he was unaware whether or not Warming had done so.[6] Under these circumstances, we agree that a remand is appropriate so that the Board may determine in the first instance whether claimant Warming met her obligation to take all reasonable and necessary steps to preserve her employment relationship with PECO. If the Board deems it necessary that additional testimony be taken, it may appoint a referee to do so.

### ORDER

AND NOW, this 16th day of August, 1996, at No. 1731 C.D. 1995 (Claim of Kathleen Duffy), the Order of the Unemployment Compensation Board of Review, No. B–337462, dated June 9, 1995, is hereby affirmed;

At No. 2173 C.D. 1995 (Claim of Rosena A. Cody) the order of the Unemployment Compensation Board of Review, No. B–339087, dated August 2, 1995, is hereby reversed; and

At No. 1445 C.D. 1995 (Claim of Maureen A. Warming), the Order of the Unemployment Compensation Board of Review, No. B–336687, dated May 19, 1995, is hereby vacated and remanded for further proceedings consistent with the foregoing Opinion; jurisdiction is relinquished.

---

5. By contrast, the election form for taking early retirement specifically stated that, once an employee submitted the form, he or she had a period of seven days to change their mind, after which the decision would be deemed by PECO to be irrevocable.

6. In an oral interview at the local job center, Warming apparently indicated that she had not taken the test. The interviewer wrote on the record of oral interview form that "Claimant was invited to take a test, but did not do so." (R. 15a). This record of oral interview form was introduced as an exhibit at the referee's hearing, but, as we have observed, there was no testimony at the hearing, nor any finding made by the Board. Moreover, the form gives no indication regarding the circumstances surrounding Warming's failure to take the test.