# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

St. Clair Hospital,                :
              Petitioner       :
                                  :
             v.                : No. 2607 C.D. 2015
                                  : Argued: November 16, 2016
Unemployment Compensation    :
Board of Review,                :
             Respondent    :

BEFORE:     **HONORABLE MARY HANNAH LEAVITT,** President Judge
                     **HONORABLE RENÉE COHN JUBELIRER,** Judge
                     **HONORABLE ROBERT SIMPSON,** Judge
                     **HONORABLE P. KEVIN BROBSON,** Judge
                     **HONORABLE MICHAEL H. WOJCIK,** Judge
                     **HONORABLE JULIA K. HEARTHWAY,** Judge
                     **HONORABLE JOSEPH M. COSGROVE,** Judge

**OPINION BY**
**JUDGE COHN JUBELIRER**                 **FILED: February 2, 2017**

St. Clair Hospital (Employer) petitions for review of the November 18, 2015, Order of the Unemployment Compensation Board of Review (Board) reversing the Decision of a Referee to deny Katherine A. Johnson (Claimant) unemployment compensation (UC) benefits. The Board concluded that Claimant was not barred from receiving UC benefits by Section 402(b) of the Unemployment Compensation Law (UC Law)[1] because she established a necessitous and compelling reason for voluntarily terminating her employment.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(b).

Because we conclude that Claimant did not take all reasonable and necessary steps to preserve her employment, we reverse.

Claimant worked for Employer as a part-time communications specialist from November 26, 2012 until June 10, 2015. (Board Decision, Findings of Fact (FOF) ¶ 1.) Claimant's position is staffed at all times during the day and night. (Id. ¶ 3.) Until January 2015, Claimant only worked during the day and a co-worker assumed the night shift. (Id.) After the co-worker left her employment in January 2015, Employer informed Claimant and the other "employees that they would be required to rotate working the night shift so that no one employee had to be on night shift for an extended period of time." (Id. ¶ 4.) Claimant requested that she not be scheduled for night shifts and provided Employer with documentation from her physicians on a medical condition that precluded her from working the night shift. (Id. ¶ 5.) Thereafter, Employer informed Claimant that it would "not provide accommodations of any kind." (Id. ¶ 6.)

Claimant continued to request an accommodation so that she could remain in her position working only the day shift. (Id. ¶ 7.) On April 15, 2015, Employer's human resources department emailed Claimant a list of 132 open positions with Employer that would not require Claimant to work night shifts. (Id. ¶ 8; R.R. at 48a-51a.) Employer asked Claimant to look at the list of open positions and told Claimant that it would be happy to discuss which ones do not require night shifts. (R.R. at 47a.) Employer also told Claimant where to find the job descriptions, and that Claimant should call human resources with any questions. (Id.) Claimant did not call. (FOF ¶ 11.) Employer repeatedly sent Claimant letters asking her to call and subsequently specified two jobs from the larger list of openings for which it appeared that Claimant could be qualified, would not include night shifts, and had

2

a comparable compensation rate to Claimant's current position. (Id. ¶¶ 9-10; R.R. 62a-63a.) Although Claimant applied for a position that was not on the list and for which she was not qualified, Claimant did not call human resources or apply for any of the open positions identified by Employer. (FOF ¶¶ 7, 11.) Claimant resigned from her position on June 10, 2015. (Id. ¶ 11.)

Claimant filed a claim for UC benefits, which the Local UC Service Center granted under Section 401(d)(1) of the UC Law, 43 P.S. § 801(d)(1),[2] and Section 402(b) of the same. Employer appealed. After a hearing held on July 29, 2015, the Referee concluded that Claimant was not ineligible for UC benefits under Section 401(d)(1), but ineligible under Section 402(b) of the UC Law because Claimant quit her employment without contacting Employer about available positions. (Referee Decision at 2-3.)

Claimant appealed to the Board. The Board reversed, concluding that Claimant was not ineligible for benefits under Section 402(b) of the UC Law because:

> There is no dispute that, at the time of her separation, [C]laimant had adequate health reasons to justify quitting, that she informed [E]mployer of her health-related problem, and that she requested an accommodation. There is also no dispute that [E]mployer repeatedly informed [C]laimant that it would not accommodate her request not to work the night shift because it was considered an essential function of her position. [E]mployer did not give [C]laimant a firm offer of other

---

[2] Section 401(d)(1) of the UC Law provides, in relevant part:

Compensation shall be payable to any employe who is or becomes unemployed, and who--

. . .

(d)(1) Is able to work and available for suitable work . . .

43 P.S. § 801(d)(1).

alternative employment that would not require her to work the night shift. Rather, [E]mployer only presented [C]laimant with other opportunities that [C]laimant may have been qualified for and that [C]laimant could apply for that would not require her to work at night. Thus, because a firm offer of alternative employment was not given to [C]laimant, and [C]laimant had adequate health reasons for quitting that [E]mployer knew about, she had a necessitous and compelling reason for quitting.

(Board Decision at 3.) This appeal follows.

On appeal,[3] Employer argues that the Board erred in determining that Claimant had a necessitous and compelling reason for voluntarily terminating her employment because Claimant did not take all necessary and reasonable steps to preserve her employment. Employer further argues that the Board misapplied the "firm offer" doctrine as used in this Court's UC jurisprudence by justifying its award of benefits based on its determination that Employer did not give Claimant a "firm offer."

Section 402(b) of the UC Law provides, in relevant part:

An employe shall be ineligible for compensation for any week-- . . . (b) In which h[er] unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature, irrespective of whether or not such work is in "employment" as defined in this act: Provided, **That a voluntary leaving work because of a disability <u>if the employer is able to provide other suitable work,</u> shall be deemed not a cause of a necessitous and compelling nature**[.]

43 P.S. § 802(b) (emphasis added). The claimant has the burden of proving that she had a necessitous and compelling cause for voluntarily terminating her

---

[3] This Court's scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact were supported by substantial evidence. Johns v. Unemployment Comp. Bd. of Review, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

4

employment. PECO Energy Co. v. Unemployment Comp. Bd. of Review, 682 A.2d 58, 60 (Pa. Cmwlth. 1996). A necessitous and compelling cause is that which "results from circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner." Taylor v. Unemployment Comp. Bd. of Review, 378 A.2d 829, 832-33 (Pa. 1977). To meet this burden, the claimant must generally demonstrate that she took "all necessary and reasonable steps to preserve the employment relationship." PECO Energy Co., 682 A.2d at 61.

Employer and the Board disagree as to the steps an employee and employer must take to preserve the employment relationship in a medical condition case. In general, a medical condition that limits an employee's ability to perform work duties can provide a necessitous and compelling reason to quit one's employment. Genetin v. Unemployment Comp. Bd. of Review, 451 A.2d 1353, 1355 (Pa. 1982). Yet, "since it was not the intent of the [UC Law] to provide health and disability benefits for an ill employee who is not physically able and available for participation in the work force" an employee who voluntarily leaves employment may receive UC benefits only if the employee is able to work and available for suitable work. Id. In such situations, the employee is obliged to communicate his or her medical problem to the employer, but is not required to attempt "to initiate or effectuate the transfer to more suitable work." Id. at 1356. Thus, to establish that a medical condition is a necessitous and compelling reason for the voluntary termination of one's employment, a claimant must: (1) establish, through competent evidence, the existence of a medical condition; (2) inform the employer of the condition; and (3) be able and available to work if a reasonable

5

accommodation can be made. Id. Further, it is not necessitous and compelling if "the employer is able to provide other suitable work." 43 P.S. § 802(b).

Employer relies on this Court's decision in Nolan v. Unemployment Compensation Board of Review, 797 A.2d 1042 (Pa. Cmwlth. 2002), to support its position that employees who are limited by a medical condition must remain proactive and take all reasonable and necessary steps to preserve the employment relationship.[4] In Nolan, the claimant was employed with the Pennsylvania Liquor Control Board (PLCB) when she aggravated a pre-existing medical condition that prevented her from fully performing her duties. Id. at 1044. After receiving notice of her condition, PLCB told the claimant that she "must retire from [her] position." Id. (internal quotation marks omitted). The claimant was also informed that should she wish to pursue other employment with the Commonwealth, the State Civil Service Commission (Commission) would assist her, but that she first must complete a Civil Service Application. Id. The claimant did not complete an application or contact the Commission. Id. at 1045.

The claimant applied for UC benefits, which were granted by the Office of Employment Security "on the basis that there were no positions that could accommodate the limitations caused by her medical condition." Id. The employer appealed. After a hearing, a referee determined that she was ineligible for benefits under Section 402(b) because she voluntarily left her employment. Id. The Board affirmed and so did this Court. Notwithstanding the fact that PLCB required the

---

[4] Employer also relies upon this Court's decisions in PECO Energy Co. and Teti v. Unemployment Compensation Board of Review (Pa. Cmwlth., No. 2369 C.D. 2013, filed Oct. 17, 2014), to support its position. Because neither case involves an employee who voluntarily left her employment due to a medical condition, these cases are neither applicable nor persuasive.

6

claimant to retire from her current position, we concluded that PLCB offered the claimant a reasonable accommodation by presenting the claimant with other employment opportunities within the Commonwealth. Id. at 1046. "By electing not to complete the civil service application, [c]laimant foreclosed the possibility that she could remain employed by the Commonwealth, thus failing to take all reasonable and necessary steps to preserve her employment." Id. Although there was not a firm offer, we said that "the fact that a job is not guaranteed does not amount to cause of a necessitous and compelling nature to justify a quit." Id.

The Board's argument in response relies exclusively on the Pennsylvania Supreme Court's decision in Genetin. The claimant in Genetin was employed as a truck driver when he took a leave of absence due to his medical condition. Genetin, 451 A.2d at 1354. The claimant was unable to resume his duties as a truck driver and was assigned to a position as a sweeper. Id. The claimant voluntarily terminated his employment and applied for UC benefits. Id. A referee found the claimant ineligible for benefits based on a determination that the claimant failed to show cause of a necessitous and compelling nature. Id. The Board and this Court affirmed.

On appeal to the Supreme Court, the Supreme Court defined the question as: "what is required of an employee who elects to terminate employment for health reasons if he wishes to maintain entitlement to unemployment compensation benefits." Id. The Supreme Court noted that this Court's precedent at the time held that an employee "must attempt to initiate or effectuate the transfer to more suitable work" if she is to be eligible for benefits. Id. at 1356. It was this "unwarranted imposition of responsibility upon the employee" that led the Supreme Court to reverse. Id. The Supreme Court reasoned that "[t]he availability

7

of an employment position, the duties expected to be performed by one serving in that capacity, and the desirability of that individual for service in that capacity are managerial judgments over which the employee has no control." Id. The Supreme Court viewed this Court's insistence that an "employee[] initiat[e] the quest for an alternative position" as "a meaningless ritual that does not further the objectives of the [UC Law]." Id. Because the Board did not assess whether the employer offered the claimant suitable work in light of the claimant's medical condition, the Supreme Court remanded the matter for additional fact finding. Id. Yet, the Supreme Court further noted that "in the event such an opportunity was proposed to [a claimant] and he declined to avail himself of it, a finding of ineligibility under section 402(b)(1) would then be appropriate." Id. Thus, the Court recognized that a claimant cannot decline to take reasonable steps to preserve her employment.

Genetin stands for the proposition that an employee who can no longer perform his or her duties due to a medical condition need not "initiate the quest" for a more suitable position. Id. at 1356. Yet, neither Genetin, nor any other binding case interpreting Section 402(b) of the UC Law, requires employers to present to the employee a firm offer of employment in an alternative position. After the employer initiates the quest and proposes an opportunity for suitable alternative employment, the employee with the medical condition cannot simply sit on her hands. As is required in unemployment compensation cases, to receive benefits, an employee must "take all necessary and reasonable steps to preserve the employment relationship." Nolan, 797 A.2d at 1046. Like in Nolan, Claimant here was forced to leave her position because Employer would not make an accommodation for her medical condition. Also like Nolan, Claimant was not required to initiate a quest for an alternative position with Employer, but was

8

presented by Employer with a proposal, consisting of alternative options along with an action that was necessary to preserve her employment; in <u>Nolan</u>, to fill out an application, here, to call human resources. Claimant failed to take any meaningful step to preserve her employment, thus foreclosing the possibility of remaining employed. After being presented with two positions with comparable salary, Claimant simply was asked to call Employer's human resources department to discuss, and she did not.

The Board would like us to distinguish <u>Nolan</u> because, in <u>Nolan</u>, PLCB would have identified the positions for which claimant was qualified, if the claimant had submitted an application, and here, Employer required Claimant to identify the positions. We disagree. While Employer initially asked Claimant to look at the positions listed, Employer stated that it would be happy to discuss the positions, and followed-up with Claimant by identifying two specific positions that appeared to meet her qualifications. (R.R. at 47a, 62a-63a.) Thus, Employer initiated the quest for a more suitable position, identified two positions within Claimant's qualifications, and signaled to Claimant its willingness to enter into a collaborative process to discover the most suitable position. (R.R. at 62a-63a.) By choosing to not even call Employer after it identified the two positions, Claimant did not take all reasonable and necessary steps to preserve her employment and, therefore, did not meet her burden of proving that she had cause of a necessitous and compelling reason to leave her employment.

Accordingly, we conclude that Claimant is ineligible for UC benefits pursuant to Section 402(b) of the UC Law and reverse the Order of the Board.

_____
**RENÉE COHN JUBELIRER,** Judge

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

St. Clair Hospital,                          :
                       Petitioner             :
                                        :
                      v.                          :          No. 2607 C.D. 2015
                                          :
Unemployment Compensation                    :
Board of Review,                             :
                       Respondent            :

# **O R D E R**

      **NOW**, February 2, 2017, the Order of the Unemployment Compensation Board of Review, entered in the above-captioned matter, is hereby **REVERSED**.

_____
**RENÉE COHN JUBELIRER,** Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

St. Clair Hospital,                                 :
                                                    : No. 2607 C.D. 2015
                              Petitioner            : Argued:  November 16, 2016
                                                    :
                    v.                              :
                                                    :
Unemployment Compensation                           :
Board of Review,                                    :
                                                    :
                              Respondent            :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE JULIA K. HEARTHWAY, Judge
           HONORABLE JOSEPH M. COSGROVE, Judge


DISSENTING OPINION
BY JUDGE WOJCIK                              FILED:  February 2, 2017


           I join in the well-reasoned dissenting opinion of Judge Cosgrove.  I
write separately, however, to stress that the jobs identified by the employer in this
case are only a possible suitable accommodation for the claimant's medical
condition and that the claimant is only disqualified from receiving benefits under
Section 402(b) of the Unemployment Compensation Law[1] "if the employer is able
to provide other suitable work . . . ."  Because the record in this case lacks

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b).

sufficient evidence demonstrating that the employer is able to provide such suitable work under Section 402(b), unlike the majority, I would affirm the order of the Unemployment Compensation Board of Review. Accordingly, I respectfully dissent.

_____
MICHAEL H. WOJCIK, Judge

President Judge Leavitt joins in this Dissenting Opinion.
Judge Cosgrove joins in this Dissenting Opinion.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

St. Clair Hospital, : 
            Petitioner : 
     : 
    v. : 
     : 
Unemployment Compensation : 
Board of Review, : No. 2607 C.D. 2015
            Respondent : Argued: November 16, 2016


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE  RENÉE COHN JUBELIRER, Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE JULIA K. HEARTHWAY, Judge
               HONORABLE JOSEPH M. COSGROVE, Judge


DISSENTING OPINION
BY JUDGE COSGROVE          FILED:  February 2, 2017


As the Majority opinion runs counter to *Genetin v. Unemployment Compensation Board of Review*, 451 A.2d 1353 (Pa. 1982), I must dissent.  In *Genetin*, the Supreme Court held that once an employee has communicated a medical problem to the employer "and explained [his] inability to perform [his] regularly assigned duties, an employee can do no more… As long as the employee is available where a reasonable accommodation is made by the employer, that is not inimicable to the health of the employee, the employee has demonstrated the good faith effort to maintain the employment relationship required under the [Law]." *Id.* at 1356.

In this case, there is no question that such communication was made. The difference of opinion seems to rest on which side next has the greater

responsibility. The Majority suggests that Claimant, in this case, was provided a large list of potential jobs - 132 in number, with Employer ultimately narrowing this to two - and asked to contact human resources. For her part, Claimant specifically applied for a different position not identified on this list, which cannot be seen as anything other than a clear indication of her "good faith effort to maintain the employment relationship..." *Genitin,* 451 A.2d at 1356. However, because Claimant never contacted human resources nor applied for one of the myriad of jobs (or the sub-species of two) which Employer had presented, the Majority suggests Claimant failed to fulfill her obligation under the Law and is thus precluded from receiving benefits.

What is more important under the *Genetin* rationale, however, is what steps Employer did (or did not) take. As Claimant clearly indicated her desire to "maintain the employment relationship … it was then incumbent upon the [E]mployer to *provide* suitable work." 451 A.2d at 1356 (emphasis added). No such action was taken by Employer, nor can the presentation of a list of 132 jobs, or the singling out of one, two, or ten possible jobs, satisfy the mandate required by *Genetin*. There is nothing subtle about the Supreme Court's command that an employer in a case such as this must "provide" work appropriate to the employee and her particular situation. Whether this is to be couched in the term "firm offer" or some other language, there can be little doubt that the steps taken by Employer in this case do not satisfy *Genetin*. As the Board below got it right, I am compelled to dissent.

_____
JOSEPH M. COSGROVE, Judge

President Judge Leavitt and Judge Wojcik join in this dissent.

JMC - 2
