# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Patrick V. Puzzuto,             :
           Petitioner       :
           :
      v.            :    No. 1736 C.D. 2016
           :    Submitted: March 17, 2017
Unemployment Compensation    :
Board of Review,            :
           Respondent    :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE JOSEPH M. COSGROVE, Judge


*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**            **FILED: July 26, 2017**


      Petitioner Patrick V. Puzzuto (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board), dated September 22, 2016. The Board affirmed the Unemployment Compensation Referee's decision, which denied Claimant unemployment compensation benefits pursuant to Section 402(b) of the Unemployment Compensation Law (Law),[1] relating to voluntary separation without cause of a necessitous and compelling nature. We affirm the Board's order.

      Claimant filed for unemployment compensation benefits after voluntarily terminating his position as a full-time Line Foreman for Henkels &

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

McCoy, Inc. (Employer). The Allentown Unemployment Compensation Service Center (Service Center) issued a Notice of Determination, dated June 21, 2016, finding Claimant ineligible for benefits under Section 402(b) of the Law. (Certified Record (C.R.), Item No. 6.) The Service Center reasoned that Claimant failed to meet his burden to prove cause of a necessitous and compelling nature for quitting. (*Id.*) Claimant appealed the Service Center's determination.

A Referee conducted an evidentiary hearing on August 16, 2016. Claimant testified that he worked for Employer from 1988 until June 16, 2016, at which time he voluntarily left his employment for several reasons. (C.R., Item No. 11 at 6, 10.) Claimant testified that on several occasions prior to terminating his employment, Employer failed to compensate Claimant as promised. (*Id.* at 9.) First, Employer promised Claimant one *per diem* pay, per week, for commutes between job sites. (*Id.*) Employer provided Claimant the *per diem* pay on only one occasion. (*Id.*) Second, Employer promised to reimburse Claimant for a hotel room used to store equipment that did not fit on the work trucks. (*Id.*) Employer never reimbursed Claimant for the hotel room. (*Id.*)

On June 15, 2016, Employer requested Claimant complete a job within a timeframe that Claimant believed impossible. (*Id.* at 7.) Employer specifically desired that Claimant pull several thousand feet of fiber cable through an "innerduct" for a customer. (*Id.*) Claimant did not believe that task could be accomplished without overtime pay, yet Employer demanded completion without using overtime. (*Id.*) Claimant described this final scenario as the "point [where] I couldn't do it anymore." (*Id.* at 17.) That same evening, Claimant provided Employer with a one-week notice that he was voluntarily terminating his

2

employment.  (*Id.* at 10.)  Employer then instructed Claimant not to report to work the following day (*i.e.*, June 16, 2016).  (*Id.* at 10-11.)

James Hensley (Hensley) testified at the evidentiary hearing as Employer's first witness.  Hensley worked as a Project Manager for Employer.  (*Id.* at 3.)  Hensley characterized Claimant's grievances in the month leading up to his voluntary termination as centering on a lack of overtime pay.  (*Id.* at 14-15.)  Hensley testified that Claimant typically worked 50-60 hours per week and that Employer paid Claimant overtime pay.  (*Id.*)  When asked by Claimant whether overtime would be paid for the fiber cable job, Hensley answered no.  (*Id.* at 13.)  Claimant voiced his disdain and left his employment only after Employer ceased paying overtime.  (*Id.* at 7, 14-15.)  Hensley further testified that he told Claimant there was no need for a one-week notice, and that he would just "let [Claimant] go" the following day.  (*Id.* at 13-14.)  In regards to the fiber cable job specifically, Hensley testified that he offered to pay overtime if the job could be completed "that day," June 15, 2016.  (*Id.* at 12-13.)  Hensley instructed Claimant to "put a box on it" and finish the fiber cable job the following day if Claimant and his crew could not complete the job that day.  (*Id.* at 13.)  Hensley denied that Employer offered Claimant *per diem* pay when driving to job sites from home.  (*Id.* at 14.)  Hensley testified that there were offices, yards, and hotels where travelling employees would meet, such that neither Hensley "nor anybody with Henkels would ever agree to [*per diem* travel pay]."  (*Id.*)

Jon Joynson (Joynson) testified at the evidentiary hearing as Employer's second witness.  Joynson worked for Employer as the Southeast Area Manager.  (*Id.* at 3.)  Joynson stated that he "had very little involvement" with Claimant professionally.  (*Id.* at 15.)  Claimant did, however, contact Joynson

3

seeking work in the southeast region. (*Id.* at 15-16.) Joynson informed Claimant that he could not hire unionized workers like Claimant. (*Id.* at 15.) When Claimant told Joynson he would seek employment in the east region, Joynson advised Claimant to contact Employer to "get some kind of release." (*Id.* at 16.) Joynson believed Employer would "frown seriously upon" Claimant terminating his employment in one region and moving to another without such a release. (*Id.*) The record does not indicate whether Claimant sought or obtained a release to work for Employer in another region.

The Referee issued a decision and order on August 17, 2016. (C.R., Item No. 12.) The Referee affirmed the Service Center's determination and made the following findings of fact:

1. From May 9, 1998 [sic] through June 16, 2016, the claimant worked as a full-time Line Foreman for Henkels & McCoy, Incorporated, earning $29.47 per hour.

2. Prior to June 16, 2016, the claimant became increasingly dissatisfied with his job, as he believed the employer expected more work from him and his crew than could be completed in a regular workday without allowing overtime.

3. On or about June 15, 2016, the claimant became upset that the Project Manager would not allow him and his crew to work overtime to complete a job.

4. After ending the job for the day as requested by the Project Manager, the claimant sent several text messages to the Project Manager about his dissatisfaction with the job. During those text messages, the claimant informed the Project Manager that he had "had enough" and was putting in a one-week notice.

5. The Project Manager informed the claimant that he would not need to work out his one-week notice

4

and accepted his resignation immediately that day, June 15, 2016.

6. The claimant was then provided with a ride home by the employer from the jobsite in Ohio.

(*Id.*) The Referee determined that Claimant voluntarily terminated his employment due to dissatisfaction with the work environment and failed to show cause of a necessitous and compelling nature for doing so. (*Id.*) The Referee reasoned that:

> Here, the competent evidence of record establishes that the claimant became increasingly dissatisfied with the work environment prior to June 15, 2016. On June 15, 2016, the claimant was working at a jobsite and believed that overtime was necessary in order to complete the job; however, the claimant's Project Manager informed the claimant that overtime could not be offered and instead, instructed the claimant to finish up the job for the day. Upon leaving the jobsite, the claimant and the Project Manager engaged in several text messages between them, during which the claimant informed the Project Manager that he was "done" and that he was putting in a one-week notice. The claimant provided no competent evidence of record to establish that he had attempted to address these concerns with either the Project Manager or any other member of the employer's management staff prior to voluntarily leaving his job on June 15, 2016. While the claimant may have been dissatisfied with the working environment, he also failed to show that there was a unilateral change in his work environment or assignment or that he was deceived in any way by the employer as to what the job entailed.

(*Id.*) The Referee, therefore, deemed Claimant ineligible for benefits under Section 402(b) of the Law. (*Id.*)

Claimant appealed to the Board, essentially arguing that he had cause of a necessitous and compelling nature to quit because Employer demanded that Claimant complete more work than Claimant believed to be possible in a regular 10-hour day and refused to pay overtime for additional hours to complete

5

the job. The Board affirmed the Referee's decision and order and adopted the Referee's findings of fact and conclusions of law. (C.R., Item No. 14.) Claimant now petitions this Court for review of the Board's order.

On appeal,[2] Claimant argues that the Board erred as a matter of law in concluding that he did not have cause of a necessitous and compelling nature for voluntarily terminating his employment. (Claimant's Br. at 6.) Claimant first submits that Employer's failure to provide *per diem* compensation to Claimant while travelling to and from home and job sites[3] and Employer's failure to reimburse Claimant for hotel and living expenses incurred at the behest of Employer constituted causes of a necessitous and compelling nature. (*Id.* at 11.) Claimant, however, waived these arguments by not raising them before the Board.[4] Claimant also submits, as he did before the Board, that Employer demanded that Claimant complete more work than Claimant believed to be possible in a regular 10-hour day, and Employer refused to pay overtime for additional hours to complete the job. Claimant submits that Employer, therefore, placed "unrealistic pressures and expectations" on Claimant, which constituted cause of a necessitous and compelling nature. (*Id.* at 12.)

Section 402(b) of the Law provides, in relevant part, that a claimant shall be ineligible for compensation for any week in which the claimant's

---

[2] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

[3] At the evidentiary hearing before the Referee, Claimant testified that the *per diem* payments were to cover commutes from job site to job site. In his brief, Claimant now avers that the *per diem* payments were to cover commutes to and from home and job sites.

[4] *Grever v. Unemployment Comp. Bd. of Review*, 989 A.2d 400, 402 (Pa. Cmwlth. 2010) ("Issues not raised at the earliest possible time during a proceeding are waived.").

6

"unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." Whether a claimant had cause of a necessitous and compelling nature for voluntarily terminating his employment is a question of law subject to this Court's review. *Brunswick Hotel & Conference Ctr., LLC v. Unemployment Comp. Bd. of Review*, 906 A.2d 657, 661 (Pa. Cmwlth. 2006). A claimant who voluntarily terminates his employment "bears the burden of proving that necessitous and compelling reasons motivated that decision." *Fitzgerald v. Unemployment Comp. Bd. of Review*, 714 A.2d 1126, 1129 (Pa. Cmwlth. 1998), *appeal denied*, 794 A.2d 364 (Pa. 1999). To establish cause of a necessitous and compelling nature, a claimant must show that (1) circumstances existed that produced real and substantial pressure to terminate employment, (2) like circumstances would compel a reasonable person to act in the same manner, (3) the claimant acted with ordinary common sense, and (4) the claimant made a reasonable effort to preserve his employment. *Procito v. Unemployment Comp. Bd. of Review*, 945 A.2d 261, 264 (Pa. Cmwlth. 2008).

For working conditions to constitute a cause of a necessitous and compelling nature, a claimant must show that he was unaware of such conditions and that the same became onerous. *Hazzard v. Unemployment Comp. Bd. of Review*, 413 A.2d 478, 479 (Pa. Cmwlth. 1980). A claimant can alternatively meet his burden of proof by showing that the employer deceived him as to the conditions of employment or that his employer unilaterally changed the employment agreement. *Id.* Mere dissatisfaction with wages and working conditions, the amount of work received, or the lack of overtime is not a cause of a necessitous or compelling nature excusing voluntary termination of employment. *DeNofa v. Unemployment Comp. Bd. of Review*, 413 A.2d 786, 787 (Pa.

7

Cmwlth. 1980). A claimant's burden of proof is not satisfied when a claimant fails to take all necessary and reasonable steps to preserve the employment relationship. *PECO Energy Co. v. Unemployment Comp. Bd. of Review*, 682 A.2d 58, 61 (Pa. Cmwlth. 1996).

Claimant takes the position that Employer's demand that Claimant complete an excessive amount of work in one 10-hour workday combined with Employer's unwillingness to authorize overtime for work on the fiber cable job constituted cause of a necessitous and compelling nature to quit. Claimant submits that Employer expected more work from Claimant and his crew than could be completed in a regular workday without allowing overtime. Claimant specifically avers that Employer required 15,000 feet of fiber cable be pulled in 10 hours. Claimant maintains that if he did not complete the job within 10 hours, Employer would not pay overtime. A job of this magnitude, according to Claimant, required a 15-hour work day.[5] Claimant's complaints, which may be characterized as complaints regarding performance expectations and availability of overtime pay, fall within the general category of dissatisfaction with working conditions.[6] As

___

[5] Claimant raises several factors in his brief in support of his argument that the job was unreasonable. These factors do not appear in the record, and Claimant did not challenge the Board's findings of facts. The Board's findings of fact are, therefore, binding on appeal, and we do not address or consider the factors now cited by Claimant. *See Campbell v. Unemployment Comp. Bd. of Review*, 694 A.2d 1167, 1169 n.4 (Pa. Cmwlth. 1997).

[6] We note that the essence of Claimant's argument on appeal is unclear. At times, Claimant appears to argue that Employer demanded the fiber cable job be completed in one day, which Claimant believed to be an impossible task given the available manpower and equipment. At other times, Claimant appears to argue that Employer simply refused to offer overtime pay. Irrespective of what Claimant actually argues, the Referee specifically found that Claimant "provided no competent evidence of record to establish that he had attempted to address [his] concerns . . . prior to voluntarily leaving his job." (C.R., Item No. 12.) Thus, the Referee determined that Claimant did not take all necessary and reasonable steps to preserve his employment. (*Id.*)

8

discussed above, however, mere dissatisfaction with working conditions is insufficient to meet a claimant's burden of proof. *See DeNofa*, 413 A.2d at 787.

Even if we were to conclude that Employer's demands that Claimant complete the fiber cable job in 10 hours and without overtime pay could constitute cause of a necessitous and compelling nature to quit, Claimant still would not prevail. As also discussed above, a claimant's burden of proof is not satisfied when a claimant fails to take all necessary and reasonable steps to preserve the employment relationship. *PECO Energy Co.*, 682 A.2d at 61. The Board agreed with the Referee that Claimant "provided no competent evidence of record to establish that [Claimant] had attempted to address [his] concerns" prior to voluntarily terminating his employment. (C.R., Item Nos. 10, 14.) Claimant voiced his concerns to Employer through text messages *at the time* of his voluntarily termination. He did not address this concern prior to quitting, and he did not attempt to perform the work to see how much progress could be accomplished in the time-frame set by Employer and then contact Employer regarding the status of the job. Claimant's attempts to voice his concerns came too late to meet his burden of proof. Claimant, therefore, failed to take all necessary and reasonable steps to preserve his employment because Claimant's actions did not afford Employer an opportunity to remedy Claimant's concerns.[7] We conclude, therefore, that the Board did not err in affirming the Referee's determination that Claimant did not have cause of a necessitous and compelling nature when he voluntarily terminated his employment.

---

[7] *See Porco v. Unemployment Comp. Bd. of Review*, 828 A.2d 426, 429 (Pa. Cmwlth. 2003) (opining, in the context of workplace harassment, that employer must have opportunity to remedy issues complained of before claimant deemed to have taken all necessary and reasonable steps to preserve his employment).

Accordingly, we affirm the Board's order.

_____
P. KEVIN BROBSON, Judge

Judge Cosgrove dissents.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Patrick V. Puzzuto, :
                        Petitioner :
                                 :
        v.                       :   No. 1736 C.D. 2016
                                 :
Unemployment Compensation        :
Board of Review,                 :
                        Respondent :

# O R D E R

AND NOW, this 26th day of July, 2017, the order of the Unemployment Compensation Board of Review is hereby AFFIRMED.

_____
P. KEVIN BROBSON, Judge