Richard G. Mroz, : 
                Petitioner : 
                 : 
      v. : 
                 : 
Unemployment Compensation : 
Board of Review, : No. 1028 C.D. 2020
                Respondent : Submitted: March 8, 2024


BEFORE:    HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE STACY WALLACE, Judge

OPINION BY
JUDGE COVEY                             FILED: April 19, 2024

Richard G. Mroz (Claimant) petitions this Court pro se for review of the Unemployment Compensation (UC) Board of Review's (UCBR) September 2, 2020 order affirming the Referee's decision that denied Claimant UC benefits under Section 402(b) of the UC Law (Law).[1] Claimant presents one issue for this Court's review: whether the UCBR erred by affirming the Referee's conclusion that Claimant failed to satisfy his burden of proving a necessitous and compelling reason for failing to return to his job as a delivery driver. After review, this Court affirms.

Smart Lab, Incorporated (Employer), a dental laboratory, employed Claimant as a delivery driver. Claimant's duties included traveling to dental offices and interacting with their receptionists. Claimant resides with his wife, who has chronic pulmonary issues, hypertension, asthma, and a clotting disorder, and is

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b) (relating to leaving work without cause of a necessitous and compelling nature).

obese. From the onset of the COVID-19 pandemic, Claimant was concerned about performing his job duties, given his wife's health challenges. Claimant had multiple discussions with Employer regarding the matter. Employer agreed to give Claimant time off from work, beginning March 14, 2020, due to his concerns. Thereafter, Employer provided Claimant the ability to continue working during the COVID-19 pandemic. Subsequent to Claimant's last day worked, Employer made multiple efforts to return him to his position, which Claimant declined.

On March 22, 2020, Claimant applied for UC benefits. On May 26, 2020, the Altoona UC Service Center determined that Claimant was eligible for UC benefits under Section 401(d)(1) of the Law.[2] Employer appealed from the UC Service Center's determination. On July 10, 2020, the Referee held a hearing. On July 14, 2020, the Referee reversed the UC Service Center's determination and found Claimant ineligible for UC benefits under Section 402(b) of the Law. Claimant appealed to the UCBR. On September 2, 2020, the UCBR affirmed the Referee's decision. Claimant appealed to this Court.[3]

Initially, Section 402(b) of the Law provides, in relevant part, that an employee shall be ineligible for UC benefits for any week "[i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature[.]" 43 P.S. § 802(b). This Court has explained:

> The claimant has the burden of proving that []he had a necessitous and compelling cause for voluntarily terminating h[is] employment. *PECO Energy Co. v. Unemployment Comp. Bd. of Rev*[.], 682 A.2d 58, 60 (Pa.

---

[2] 43 P.S. § 801(d)(1) (relating to an employee's ability to work and availability for suitable work).

[3] This Court's review is limited to determining whether constitutional rights were violated, whether an error of law was committed, whether the agency's practices or procedures were violated, or whether the findings of fact were supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

Cmwlth. 1996). A necessitous and compelling cause is that which "results from circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner." *Taylor v. Unemployment Comp. Bd. of Rev*[.], . . . 378 A.2d 829, 832-33 ([Pa.] 1977). **To meet this burden**, **the claimant must generally demonstrate that** []**he took "all necessary and reasonable steps to preserve the employment relationship**." *PECO Energy Co.*, 682 A.2d at 61.

*St. Clair Hosp. v. Unemployment Comp. Bd. of Rev.*, 154 A.3d 401, 404-05 (Pa. Cmwlth. 2017) (*en banc*) (emphasis added).

Claimant argues that he satisfied his burden of proving a compelling and necessitous reason to quit his job because he discussed his concerns with Employer many times and Employer stated that it could not ameliorate those concerns. Claimant cites *Concordia of South Hills v. Unemployment Compensation Board of Review* (Pa. Cmwlth. No. 602 C.D. 2022, filed August 17, 2023) (*Concordia*), and *Lundberg v. Unemployment Compensation Board of Review* (Pa. Cmwlth. No. 29 C.D. 2021, filed October 14, 2021), to support his position.[4] Employer rejoins that Claimant's perceived risk to his health and his wife's health does not give rise to a necessitous and compelling reason not to return to work.

In *Concordia*, this Court illuminated:

[I]n a COVID[-19 pandemic]-related case where an employee has a concern about the utilization of inadequate safety measures, or fears related to [his] health, or both, **the burden to make a reasonable effort to preserve employment requires an employee to give notice to the employer as to [his] concerns and health conditions** *and to allow the employer an opportunity to modify the*

---

[4] This Court's memorandum opinions issued after January 15, 2008, may only be cited "for [their] persuasive value, but not as binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

*employee's work conditions*. *See Lundberg* . . . [,] slip op. at 3.[5] "This is the case even where there is a real and serious safety concern, or where a[n employee] has a medical condition which endangers h[im]." *Id.* (first citing *Iaconelli v. Unemployment Comp. Bd. of Rev.*, 423 A.2d 754, 756 (Pa. Cmwlth. 1980), then citing *St. Clair Hosp.* . . . "Once [a concern is] communicated, an employer must have a reasonable opportunity to make accommodations with respect to the work conditions and/or medical condition." *Id.* (citing *Blackwell v. Unemployment Comp. Bd. of Rev.*, 555 A.2d 279, 281-82 & n.6 (Pa. Cmwlth. 1989)).

*Concordia*, slip op. at 5-6 (bold and italic emphasis added). The *Concordia* Court held that the claimant met her burden of proving that she left work for cause of a necessitous and compelling nature because she had communicated her specific issues and concerns to her employer, i.e., she told her supervisor that she was concerned that others were not following the COVID-19 pandemic protocols and requested a transfer to the kitchen, but the employer failed to accommodate her concerns or instruct her on how to otherwise properly request a transfer.

Here, Claimant testified:

I had met with the two gentlemen, [Employer's managers Jon Gaich (Gaich)] and Dale,[6] on my last day of work on [March 13, 2020,] and voiced concerns about, boy, **if this blows up and things get really bad**[,] **I'm going to have to**, you know, **look at things because my number one concern is my safety**, **health for me and my wife**.

---

[5] In *Lundberg*, this Court held, as it related it to the COVID-19 pandemic:

While one can sympathize with [the c]laimant's fears in the face of the chaos attendant to the early stages of the COVID-19 pandemic, the [L]aw does not excuse h[im] of the duty to inform [the e]mployer of h[is] safety concerns and health problems **and afford** [**the e**]**mployer the opportunity to mitigate and/or accommodate them**.

*Id.*, slip op. at 4 (emphasis added).

[6] Dale's last name does not appear in the Certified Record.

4

Certified Record (C.R.) at 104 (emphasis added).  Claimant further related, on May 7, 2020:

> [Gaich] had contacted me and wanted to know if I was willing to come back yet.  And I guess he was saying they started, starting [sic] to see the need for drivers.  And I told him, you know, I appreciated him contacting me and I wanted to have a -- because he initially contacted me by text.  During the conversation, I kind of reiterated what had been discussed on that Friday while I talked to him and Dale both before and after my shift on [March 13, 2020,] that **I'm not comfortable coming back**, you know, right now **because of concern for safety and health for myself and my wife who is at a very high risk and vulnerable because of various medical conditions**.

C.R. at 104 (emphasis added).

> Claimant described:
>
> C[laimant's] L[awyer:]  Did you get a text message on May 22[, 2020,] asking you if you could return to work again?
>
> C[laimant:]  I did.
>
> C[laimant's] L[awyer:]  And did you respond?
>
> C[laimant:]  I did.  And I, excuse me, trying to look through my documents here.  Yeah, I said this, like I said in the text, speaks for itself.  I think he really had not changed since I spoke with [Gaich] on May 7[, 2020,] that **I would assess the situation about returning to work when we get into the green phase as described by the Governor**.
>
> C[laimant's] L[awyer:]  Now, June [3, 2020,] did [Gaich] text you and offer you a job to return to work as a driver on [] June [] 5th, 2020?
>
> C[laimant:]  He did say that since the county is going back to green phase on Friday that there . . . would probably be a need for me to return.  And I said **it's about time that my wife and I discussed it**[,] **and we still believe it's best to proceed with caution because of the very high risk**

5

**that we both have because of our age and her medical conditions**. And we wanted to see if there was an increased number of cases, resurgence, more or less, because of people gathering more because of good weather and all the things like that. **So just still very weary and concerned for safety and health for myself and my wife**.

C.R. at 105 (emphasis added).

Gaich testified that Employer "already had strict disinfection protocols in place because [it] handle[s] work coming from patients' mouth[s]." C.R. at 107; *see also* C.R. at 133; UCBR Finding of Fact (FOF) 12 ("[E]mployer is a dental lab and, as such, has strict disinfection protocols."). Gaich further related:

> [Employer] also ramped up additional things according to the Worker and Building Safety Order set forth by the [s]tate. Mask requirements, [Employer] suppl[ies] everybody with gloves, hand sanitizer, all that. A follow-up email [sic], [Employer] made the use of face masks mandatory. And for those who wouldn't comply, I do believe [Employer] had said in there [Employer] will send you home immediately for not complying. I think that was before the [s]tate even said that businesses need to do that. So [Employer] kind of wanted to jump on that and be as proactive as [it] can [sic]. For not only just the drivers, but all employees here, [Employer] suppl[ies] [Personal Protective Equipment] as long as we can get it. Face masks, gloves [Employer] suppl[ies]. [Employer] do[es] supply disinfecting wipes and spray for everybody including the drivers are instructed to wipe down their vehicles before they start the day and when they finish the day. And [Employer] also ha[s] hand sanitizer here for everybody to use that wants to use that.

C.R. at 108; *see also* C.R. at 107; UCBR FOF 12 ("[E]mployer instituted specific measures to address COVID-19, such as providing its employees with masks, gloves, hand sanitizer, and disinfecting wipes, and instructing its drivers to disinfect the vehicle before and after work.").

Although Claimant expressed his concern to Employer, he merely raised a general fear for his and his wife's safety. Claimant chose to leave his job even though Employer had safety measures in place and without specifically communicating how Employer's safety measures did not address his situation and, thus, did not allow Employer to offer any mitigation and/or accommodation.

> While one can sympathize with Claimant's fears in the face of the chaos attendant to the early stages of the COVID-19 pandemic, the law does not excuse h[im] of the duty to inform Employer of h[is] safety concerns and health problems **and afford Employer the opportunity to mitigate and/or accommodate them**.

*Lundberg*, slip op. at 4 (emphasis added). Accordingly, this Court is constrained to affirm the UCBR's order.

For all of the above reasons, the UCBR's order is affirmed.


_____
ANNE E. COVEY, Judge

7

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard G. Mroz,                          :
                Petitioner    :
                          :
      v.                                :
                          :
Unemployment Compensation                 :
Board of Review,                          :     No. 1028 C.D. 2020
                Respondent    :

## O R D E R

AND NOW, this 19th day of April, 2024, the Unemployment Compensation Board of Review's September 2, 2020 order is affirmed.

_____
ANNE E. COVEY, Judge