# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Edward J. LaRose,            :
             Petitioner        :
                               :
       v.                  :    No. 315 C.D. 2021
                               :    Submitted: September 3, 2021
Unemployment Compensation       :
Board of Review,                :
            Respondent     :

BEFORE:    HONORABLE P. KEVIN BROBSON, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ELLEN CEISLER, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY PRESIDENT JUDGE BROBSON**          **FILED: December 29, 2021**

Petitioner Edward J. LaRose (Claimant) petitions, *pro se*, for review of an order of the Unemployment Compensation Board of Review (Board), dated December 31, 2020, which affirmed a decision by an unemployment compensation referee (Referee), denying Claimant benefits pursuant to Section 402(b) of the Unemployment Compensation Law (Law).[1] For the reasons set forth below, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b). Section 402(b) of the Law provides, in part, that "[a]n employe[e] shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature."

## I. BACKGROUND

Claimant was employed as a carpenter for Roba Family Farms[2] (Employer) from March 11, 2020, until his separation from employment on June 8, 2020. (C.R. at 12.) Claimant subsequently filed a claim for unemployment compensation benefits, reporting that he quit his position because Employer was causing him to work in harmful conditions without proper protective equipment. (*Id*. at 11-18.) Employer reported that Claimant quit voluntarily and without explanation. (*Id*. at 21, 23.) The Scranton UC Service Center (Service Center) thereafter denied Claimant unemployment benefits pursuant to Section 402(b) of the Law, concluding that Claimant voluntarily quit his position to seek other work. (*Id*. at 25.) Claimant appealed the Service Center's determination, and a telephonic hearing was held before the Referee. (*Id*. at 30, 39, 52.) Claimant and a witness for Employer appeared at the hearing. (*Id*. at 59.)

At the hearing, Claimant testified that Jeff Roba, one of the owners of Employer, hired Claimant. (C.R. at 61.) Claimant explained to Jeff Roba that he recently had a heart attack/stroke, and his health condition limited what he was able to do physically.[3] (*Id.* at 60-61.) Specifically, Claimant explained that the heart attack/stroke caused him to have atrial fibrillation that made him averse to dust and smoke. (*Id*. at 61.) Claimant testified that, as part of his employment, he and a

---

[2] We note that Employer's business name is used inconsistently throughout the certified record as "Roba Family Farm Inc.," "Roba Family Farms," and "Roba Tree Farm, Inc." (*See, e.g.*, Certified Record (C.R.) at 21, 25, 39.) The Pennsylvania Department of State corporate database provides that Employer's fictitious business name is Roba Family Farms, however, and we have, therefore, used that fictitious business name here.

[3] While explaining that he recently had a heart attack/stroke, Claimant also noted that his memory had been affected and that he was having trouble remembering specific dates. (C.R. at 59-60.) The Referee then asked Claimant whether he was able to continue testifying at the hearing, to which Claimant responded that he was "able to go on." (*Id*. at 60.)

coworker were building trashcan receptacles, and Claimant was sawing pressure-treated lumber. (*Id.* at 63.) While performing that work, he breathed in a significant amount of sawdust. (*Id.*) Claimant stated that it caused him to become ill, he ended up going to the hospital for treatment for his heart, and he was out of work for approximately nine days. (*Id.*) Claimant maintained contact with Jeff Roba during this time, and he explained that he believed the sawdust had caused his illness. (*Id.*) According to Claimant, Jeff Roba told Claimant that something would be done to limit the amount of dust in the work area, but when Claimant returned to work after recovering, he found that "nothing had changed as far as . . . the dust." (*Id.* at 64.) As a result, Claimant moved his workstation outside and continued sawing there. (*Id.*)

Claimant testified that he was not given any protective equipment to prevent further illness or aggravation from the sawdust. (C.R. at 67.) Claimant stated that he was later asked to spray a barn with a weatherproofing agent, and, again, he was not given protective equipment. (*Id.*) Claimant asked his coworker, who Claimant believed to be his supervisor or foreman, whether protective equipment was available, but the coworker told him that none of the protective equipment would fit him. (*Id.* at 65, 67.) Claimant admitted, however, that he did not ask Jeff Roba or any of Employer's owners whether protective equipment was available. (*Id.*) Instead, Claimant relied on the statement from the coworker. (*Id.*)

Claimant further explained that Employer had plans to build several new buildings, but the work was supposed to be subcontracted to other construction companies. (C.R. at 64-65.) Nevertheless, Claimant was required to do masonry work, which caused him to damage his knee and miss work for a day. (*Id.*) After returning, Claimant stated that he told his coworker (who he believed to be his

3

supervisor or foreman) that he was not hired to do the extra projects that were supposed to be subcontracted out, that the extra projects were too demanding on his body, and that he would have to quit his position. (*Id*.) Claimant never contacted Jeff Roba to inform him he was quitting. (*Id*. at 65.) Again, Claimant only spoke with his coworker.

Susan Roba, another one of Employer's owners, then testified as to the circumstances surrounding Claimant's departure. (C.R. at 54.) Susan Roba stated that Claimant left without informing any of the owners or his actual supervisor, Jeff Roba, that he was quitting his position. (*Id*. at 70.) Susan Roba confirmed to the Referee that the individual Claimant believed to be his supervisor was simply another employee. (*Id*.) Susan Roba stated that, at the time Claimant was hired, Employer's owners were unaware that Claimant recently had suffered a heart attack/stroke, but they later learned of the issue after Claimant went out sick. (*Id*. at 71.) As it concerns protective equipment, she testified:

> [W]e offer everything to our employees, and they're asked if they want any . . . masks or what they would need, and it's provided for them. We have . . . hazmat suits. We have masks here, so it was not brought to our attention that he was denied [protective equipment].

(*Id*.)

The Referee thereafter gave Claimant an opportunity to respond to Susan Roba's testimony, during which he insisted that he informed Employer at the time he was hired that he had issues with his heart. (*Id*. at 72.) Claimant further stated that he only asked his coworker about the protective equipment because Jeff Roba worked at a different farm, Claimant did not have a cell phone, and he did not think to go the main office to ask Susan Roba. (*Id*. at 72-73.) Thus, he relied on the statement from the coworker who he thought was his supervisor. (*Id*. at 73.) Susan Roba was also given a rebuttal opportunity, during which she maintained that

4

Employer has always had an open-door policy and that Employer was hands-on in issuing protective equipment to employees who needed it. (*Id*. at 74.) She further stated that Claimant was aware that she was in the main office and that she would have aided him if requested. (*Id*.) She, therefore, disagreed with Claimant's testimony that he did not have other means of obtaining protective equipment. (*Id*.)

After the hearing, the Referee issued a decision concluding that Claimant was ineligible for unemployment benefits pursuant to Section 402(b) of the Law. (C.R. at 79.) In so doing, the Referee issued the following findings of fact:

> 1. The claimant worked as a full-time carpenter for [the employer] from March 11, 2020[,] until [June 8, 2020] . . . .
>
> . . . .
>
> 3. The claimant's primary job duties were to perform carpentry projects for the employer.
>
> . . . .
>
> 5. When the claimant was hired by the employer, the claimant informed one of the employer's owners that he had previously suffered a heart attack and may have difficulty performing some job tasks.
>
> . . . .
>
> 9. . . . [T]he claimant . . . had atrial fibrillation . . . , which is an irregular heartbeat.
>
> 10. Due to the claimant's atrial fibrillation, [he] was absent from work for approximately nine days.
>
> 11. . . . [T]he claimant was performing his job duties and . . . had difficulty breathing due to sawdust.
>
> 12. The claimant notified one of the employer's owners about the sawdust and was allowed to move equipment outside to perform his job duties.
>
> 13. The claimant spoke with another employee who he believed was his supervisor about personal protective equipment.
>
> 14. The claimant's coworker informed [him] that the employer had hazmat suits but that they would not fit the claimant.

5

15. The claimant did not ask the employer's owners about the information provided to him by his coworker and did not ask if the employer had hazmat suits and/or personal protective equipment such as facemasks and face shields.

16. On June 8, 2020, the claimant was performing masonry work and had difficulty performing his job duties due to problems with his knees.

17. On June 8, 2020, the claimant informed his coworker that he was leaving his employment because he did not believe his health would allow him to continue [working] for the employer.

18. The claimant did not contact the employer's owners about his problems performing his job duties on June 8, 2020[,] prior to leaving work without notification to the employer's owners.

19. The employer had continuing work available for the claimant had he not resigned his employment.

(*Id*. at 77-78.)

The Referee, in concluding that Claimant did not prove cause of a necessitous and compelling nature to voluntarily quit his employment, reasoned as follows:

Although the referee understands the claimant's health problems, the claimant failed to provide any plausible explanation about why he did not question the employer's owners about whether they had hazmat suits and personal protective equipment. Even though the claimant's coworker who the claimant believed was his supervisor informed him that they did not, the employer's owner testified [that] the employer does have hazmat suits and personal protective equipment which would fit the claimant. Also, the referee finds that the claimant failed to provide any plausible explanation about why he left work on June 8, 2020[,] without any notification to the employer's owners to rectify any concerns the claimant may have had. Based upon the testimony and the documentary evidence in the record, the referee finds the claimant did not exhaust alternatives to maintain his employment.

(C.R. at 79.)

Claimant appealed the Referee's decision to the Board. The Board amended finding of fact 11 to provide that "[t]he claimant attributed his illness to sawing pressure-treated lumber and the build[-]up of dust at work," and finding of fact 12

6

to provide that "[a]fter the claimant returned to work, he moved his equipment and cutting outside so the dust wouldn't build up." (C.R. at 98.) The Board otherwise adopted the Referee's findings of fact and conclusions of law and affirmed the Referee's decision. (*Id.* at 98-99.) As to additional allegations of fact that Claimant first introduced in his brief on appeal to the Board, the Board determined that it could not consider the allegations because they constituted hearsay and the allegations were not presented at the Referee hearing. (*Id.* at 98.) As to Claimant's assertion that his health prevented him from being clear about the factual scenario at the time of the Referee hearing, the Board further observed that the Referee specifically asked Claimant if he was able to testify at the hearing in light of his health, and Claimant responded that he was able. (*Id.*) Thus, the Board rejected this assertion. (*Id.*)

In addition, the Board then provided the following reasoning for its denial of benefits:

> Perhaps, the most critical aspect of the case is whether the claimant reasonably believed that his coworker was a supervisor or foreman with whom he could discuss safety issues or his reasons for quitting. The Board is unable [to] agree that the record established that this individual was a supervisor or an agent for the employer. First, the claimant does not clearly express how he came to view this individual as a supervisor. Second, the claimant "guess[ed]" the coworker was his foreman. Third, the claimant was interviewed by and discussed his call offs due to [atrial fibrillation] "almost every day" with . . . Jeff [Roba], who was one of the owners. Accordingly, the Referee correctly found that the claimant left his employment without notification to the owners to possibly rectify his concerns.
>
> The claimant also did not establish good cause for failing to bring his new or continuing safety concerns to one of the owners at or near the time he quit. He complained that Jeff [Roba] was not there a lot as he worked on a different farm. Yet, he was able to speak to Jeff [Roba] almost every day when he was off work in May. As to [Susan Roba], the other owner, the claimant testified that she was only there sometimes. However, the claimant admitted that he did not go to the

7

office to inquire if the owner was there so he could talk to him. The claimant also lamented that when he told Jeff [Roba] they needed masks, Jeff [Roba] said he was going to clean it up but didn't mention they had masks. The claimant, however, testified that he addressed the dust problem by moving his equipment and cutting outside, and [he] continued to work there even though it wasn't cleaned up.

The Referee made extensive findings from the testimony. While the claimant disputes the accuracy of certain findings, and tries to offer his version of events, the key inquiry is whether the findings made by the Referee are supported by the testimony and evidence; not whether the testimony might lend itself to support different findings. The Board determines that the Referee's findings, as corrected above in two instances, are adequately supported by the record. Accordingly, the Board enters the following order:

The decision of the Referee is affirmed.

(C.R. at 99.) Claimant now petitions this Court for review.[4]

## II. ISSUES ON APPEAL

On appeal,[5] Claimant essentially contends that: (1) substantial evidence of record does not support the Board's finding that Claimant's coworker was not his supervisor and the Board's restatement of findings of fact 11 and 12; (2) the Board erred as a matter of law in holding that Claimant's health issues were not cause of a necessitous and compelling nature to quit his employment; and (3) the Referee erred

---

[4] Prior to appealing to this Court, Claimant filed a request for reconsideration of the Board's order, which the Board denied as untimely pursuant to Section 101.111 of the Board's regulations, 34 Pa. Code § 101.111. Claimant has not appealed the Board's denial of his request for reconsideration.

[5] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa. C.S. § 704.

8

in failing to properly conduct the Referee hearing in light of Claimant's health issues.[6]

## III. DISCUSSION

### A. Substantial Evidence

In an unemployment compensation case, the Board's findings of fact are binding on appeal if the findings, after reviewing the record as a whole, are supported by substantial evidence. *Brandt v. Unemployment Comp. Bd. of Rev.*, 643 A.2d 78, 79 (Pa. 1994). Substantial evidence has been defined by this Court as "relevant evidence upon which a reasonable mind could base a conclusion." *Johnson v. Unemployment Comp. Bd. of Rev.*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986). We examine the evidence and testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences logically and reasonably drawn from the evidence. *Id.* In determining whether the Board erred in issuing its findings, this Court is bound by the record below, and we cannot accept allegations of fact in a brief on appeal that are not supported by record evidence. *Hollingsworth v. Unemployment Comp. Bd. of Rev.*, 189 A.3d 1109, 1112-13 (Pa. Cmwlth. 2018). Lastly, the critical consideration in assessing the Board's findings is not whether evidence exists in the record that *could* support a contrary finding, but rather, whether there is evidence to support the findings the Board made. *Rodriguez v. Unemployment Comp. Bd. of Rev.*, 174 A.3d 1158, 1163 (Pa. Cmwlth. 2017).

Claimant first argues that the record lacks substantial evidence to support the Board's finding that Claimant's coworker was not a supervisor or agent for

---

[6] To the extent Claimant argues that the unemployment compensation system "unfairly hobble[s] workers," we note that such policy claims are not proper for this Court to consider, as they are outside the Court's standard of review.

Employer. In furtherance thereof, Claimant essentially contends that the coworker was the person he reported to on a daily basis, and it was, therefore, reasonable for him to believe that the individual was his supervisor. The Board responds that Claimant did not sufficiently establish that the coworker was a supervisor. The Board observes, rather, that Claimant's testimony was that he "guess[ed the coworker was his] supervisor" or "foreman." (Board's Brief at 9 (quoting C.R. at 64-65).) The Board further observes that Claimant reported to Jeff Roba when he was ill and that Jeff Roba explained Claimant's role to him when he was hired. Based on Claimant's testimony in this regard, the Board insists that substantial evidence supports its finding that the coworker was not a supervisor or agent of Employer. We agree with the Board.

At the outset, we reiterate that allegations of fact that are not supported by record evidence cannot be considered by this Court in assessing whether the Board erred in issuing its findings. *Hollingsworth*, 189 A.3d at 1112-13. After careful review of the record, Claimant's assertion in his brief to this Court that he reported to the coworker on a daily basis for his job duties was not set forth in Claimant's testimony or otherwise established in the record. We, therefore, cannot accept Claimant's allegation as fact. *Id.* Moreover, Claimant's testimony patently demonstrates that it was simply his "guess" that the coworker was his supervisor or foreman. (C.R. at 64-65.) We further agree with the Board that Claimant's testimony reveals that Jeff Roba was the individual who hired him, that he reported to Jeff Roba when he was ill, and that Claimant's position was explained to him by Jeff Roba, all of which suggest that Jeff Roba was the individual operating in a supervisory and/or managerial function, not the coworker. (*See id.* at 61, 63-65.) Thus, based on our review of the record as a whole, we conclude that the record

10

supports the Board's finding that Claimant's coworker was not a supervisor or agent for Employer. *Brandt*, 643 A.2d at 79.

Claimant next contends that substantial evidence of record does not support the Board's amendment of finding of fact 11 to provide that "[t]he claimant attributed his illness to sawing pressure-treated lumber and the build[-]up of dust at work" and finding of fact 12 to provide that "[a]fter the claimant returned to work, he moved his equipment and cutting outside so the dust wouldn't build up." (C.R. at 98.) Instead, Claimant argues that finding of fact 11 should provide that "*[t]he claimant's doctors* attributed his illness to sawing pressure-treated lumber and the build[-]up of dust," and that finding of fact 12 should indicate that Claimant was instructed by Jeff Roba and Claimant's coworker to move the operation outside. (Claimant's Brief at 23 (emphasis in original).) Again, however, neither of these assertions are supported by record evidence.

Claimant never testified that the doctors he consulted with specifically linked his illness and atrial fibrillation to the inhalation of sawdust or weatherproofing spray, and he submitted no medical documentation at the Referee hearing establishing that this was the case. Claimant only testified that it was his *belief* that the sawdust caused the illness that led to him missing roughly nine days of work. (*See* C.R. at 63-64.) Moreover, Claimant did not testify that Jeff Roba or the coworker instructed him to move his sawing operation outside; instead, he did it of his own accord after returning to work and finding his workstation unchanged from its previous state. (*Id*. at 64.) Claimant now contradicts his previous testimony in his brief on appeal, but as noted previously, we cannot consider such allegations as fact. *Hollingsworth*, 189 A.3d 1112-13.

11

Finally, as noted above, it is irrelevant whether evidence exists in the record that could support a contrary factual finding. *Rodriguez*, 174 A.3d at 1163. Our inquiry is focused, rather, on whether the Board's findings have factual support in the record. *Id*. Here, it is evident that the Board's finding that Claimant's coworker was not a supervisor or agent of Employer and the Board's amendments to findings of fact 11 and 12 are supported by substantial evidence. *Brandt*, 643 A.2d at 79.

## B. Voluntary Resignation

We next consider whether Claimant had cause of a necessitous and compelling nature to voluntarily terminate his position. As noted previously, under Section 402(b) of the Law, an employee is ineligible for unemployment benefits for any week "[i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." In a voluntary termination case, the claimant has the burden of proving the right to unemployment compensation. *St. Clair Hosp. v. Unemployment Comp. Bd. of Rev.*, 154 A.3d 401, 404 (Pa. Cmwlth. 2017) (en banc).

This Court has held that, "[t]o establish health problems as a compelling reason to quit, the claimant must (1) offer competent testimony that adequate health reasons existed to justify the voluntary termination, (2) have informed the employer of the health problems and (3) be available to work if reasonable accommodations can be made." *Lee Hosp. v. Unemployment Comp. Bd. of Rev.*, 637 A.2d 695, 698 (Pa. Cmwlth. 1994). "Further, in such cases, once an employee makes an employer aware of such health problems, the employer bears the burden to establish that it made a reasonable attempt to identify and propose possible accommodations for the employee's health problems." *Watkins v. Unemployment Comp. Bd. of Rev.*, 65 A.3d 999, 1005 (Pa. Cmwlth. 2013). Where the claimant has "failed to take all

necessary and reasonable steps to preserve the employment relationship," he cannot demonstrate a necessitous and compelling reason for leaving his job and is ineligible for benefits. *PECO Energy Co. v. Unemployment Comp. Bd. of Rev.*, 682 A.2d 58, 61 (Pa. Cmwlth. 1996). "Each case must be examined on an individual basis to understand the exigencies the claimant faced at the time [he] decided to separate from employment." *Kelly v. Unemployment Comp. Bd. of Rev.*, 172 A.3d 718, 723 (Pa. Cmwlth. 2017), *appeal denied*, 184 A.3d 547 (Pa. 2018).

Claimant argues that his health conditions constituted cause of a necessitous and compelling nature to voluntarily terminate his employment, because Employer was aware of his health conditions but did not take steps to accommodate them. In support of his contention that Employer was aware of his health conditions, Claimant focuses on conversations he had with Jeff Roba at the time Claimant was hired and during the time Claimant was off work due to illness purportedly related to sawdust, as well as conversations he had thereafter with his coworker regarding the types of responsibilities that, Claimant asserted, were beyond the capabilities of his health. As to his contention that Employer failed to accommodate his health conditions, Claimant's approach is two-fold. First, Claimant focuses on the fact that Employer did not provide him with protective equipment, asserting that it was reasonable for him to rely on the statement from his coworker that there was no protective equipment available. In addition, Claimant maintains that Employer tasked Claimant with responsibilities that Employer knew were beyond the capabilities of his health, as Claimant had discussed with his coworker, such as masonry work and erection of new buildings.

Employer responds that Claimant did not sufficiently communicate to Employer the difficulties he was having with his health, such that Claimant failed to

13

prove that he had cause of a necessitous and compelling nature to voluntarily terminate his employment. Employer notes that Claimant was in contact with Jeff Roba throughout his employment but, nonetheless, failed to inform him that he could not perform his assigned job responsibilities. Thus, Employer argues that Claimant did not take all necessary and reasonable measures to preserve his employment. Furthermore, as it concerns job suitability, Employer contends that, under this Court's precedent, Claimant acquiesced in the suitability of his position when he accepted it and that Claimant had an obligation to report his dissatisfaction and/or inability to perform his position prior to voluntarily quitting. (Board's Brief at 13 (citing *Miller v. Unemployment Comp. Bd. of Rev.*, 580 A.2d 920, 921 (Pa. Cmwlth. 1990).)

The Board is the ultimate fact-finder in unemployment compensation matters and is empowered to resolve all conflicts in evidence, witness credibility, and weight accorded the evidence. *Dumberth v. Unemployment Comp. Bd. of Rev.*, 837 A.2d 678, 681 (Pa. Cmwlth. 2003) (en banc). Witness credibility is solely within the Board's province, and credibility determinations cannot be disturbed on appeal. *First Fed. Sav. Bank v. Unemployment Comp. Bd. of Rev.*, 957 A.2d 811, 815 (Pa. Cmwlth. 2008), *appeal denied*, 970 A.2d 1148 (Pa. 2009). Here, the Board determined that Claimant did not establish that his coworker was a supervisor or an agent for Employer. Based upon that determination, the Board essentially found that Claimant did not inform Employer of his continuing concerns regarding his health or additional accommodations Claimant believed he required because he only discussed safety issues and his reasons for quitting with his coworker. This determination of credibility and resolution of the testimony is, as noted above, within the province of the Board as fact-finder and cannot be disturbed on appeal. Thus,

14

because Claimant did not inform Employer, Claimant "failed to take all necessary and reasonable steps to preserve the employment relationship" and, therefore, cannot demonstrate a necessitous and compelling reason for leaving his job and is ineligible. *PECO Energy Co.*, 682 A.2d at 61.

Accordingly, the Board did not err in concluding Claimant did not have cause of a necessitous and compelling nature to leave his employment.

### C. Referee Hearing

As it concerns the conduct of referee hearings, a referee is obligated under Section 101.21 of the Board's regulations, 34 Pa. Code § 101.21, to aid a *pro se* claimant at a referee hearing to express his rights and develop the factual record. *Bennett v. Unemployment Comp. Bd. of Rev.*, 445 A.2d 258, 259 (Pa. Cmwlth. 1982). As this Court instructed in *Bennett*:

> The referee has a responsibility . . . to assist a *pro se* claimant at a hearing so that the facts of the case necessary for a decision may be adequately developed to "[e]nsure that compensation will not be paid in cases in which the claimant is not eligible and that compensation will be paid if the facts, thoroughly developed, entitled the claimant to benefits."

*Id*. (emphasis omitted) (quoting *Robinson v. Unemployment Comp. Bd. of Rev.*, 431 A.2d 378, 380 (Pa. Cmwlth. 1981)). To make this determination, courts generally consider the referee's approach in questioning the parties—*i.e.*, "the manner in which the hearing was conducted." *Hackler v. Unemployment Comp. Bd. of Rev.*, 24 A.3d 1112, 1116 (Pa. Cmwlth. 2011) (quoting *Unemployment Comp. Bd. of Rev. v. Ceja*, 427 A.2d 631, 632 (Pa. 1981)). For example, courts have recognized that a referee's failure to afford a *pro se* claimant a meaningful opportunity to testify, to question the claimant concerning critical facts, and to allow the claimant to express the rights afforded to him at the hearing, results in the referee's conduct

15

falling below the standard set forth in Section 101.21 of the Board's regulations. *See id.*

Presently, we find no such error in the Referee's conduct of the hearing. While Claimant contends that the Referee erred in conducting the hearing based on the fact that Claimant had a heart attack/stroke and was having difficulty with his memory, the Referee specifically asked Claimant whether he was able to continue in his testimony, to which Claimant responded that he was able. We further disagree with Claimant that the Referee did not properly aid him in developing a sufficient factual record. The Referee questioned Claimant extensively regarding the circumstances surrounding his termination and his health, he posed relevant questions to Susan Roba to further develop the record, and he allowed for rebuttal testimony from both parties. Indeed, based alone on the Referee's significant factual findings, it is clear that the Referee engaged in a diligent effort to develop a sufficient factual record. (*See* C.R. at 77-78.) Finally, at the start of the hearing the Referee specifically apprised Claimant of his rights, stating:

> You have the right to be represented by an attorney or other non-legal advisor of your own choosing. You have the right to present testimony and evidence on your own behalf as well as that of witnesses, . . . you have the right to question those witnesses, and you have the right to question or cross-examine any opposing party.

(C.R. at 55.) Claimant informed the Referee that he was aware of these rights. (*Id*.) Thus, had Claimant wished to have his wife or an attorney present to help him with his testimony, he could have requested such representation. For all these reasons, the Referee did not err in his conduct of the hearing.

16

## IV. CONCLUSION

For the reasons set forth above, the decision of the Board is affirmed.

_____
P. KEVIN BROBSON, President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Edward J. LaRose,               :
           Petitioner   :
                        :
        v.              :   No. 315 C.D. 2021
                        :
Unemployment Compensation  :
Board of Review,          :
           Respondent  :

## **O R D E R**

AND NOW, this 29th day of December, 2021, the order of the Unemployment Compensation Board of Review, dated December 31, 2020, is AFFIRMED.

_____
P. KEVIN BROBSON, President Judge
